Hartford Accident and Indemnity Company, Appellant, v. Mutual Trucking Company et al., Appellees.

Gen. No. 45,134.

Opinion filed November 22, 1950. Released for publication December 28, 1950.

FRANK S. BLOCH, of Chicago, for appellant; JOSEPH P. LOEWY, of Chicago, of counsel.

WILKINSON, HALL, WITWER & MORAN, of Chicago, for appellees; J. ALFRED MORAN and THOMAS D. BURLAGE, both of Chicago, of counsel.

Mr. Presiding Justice Schwartz delivered the opinion of the court.

In this case tried without a jury, the court found against the plaintiff in its suit to recover premiums from the defendant on certain policies of workmen's compensation insurance and entered judgment on the finding. From this the plaintiff appeals. Payment was made by the defendant for the amount of the premiums to Gaylord D. Millikin, who had acted as the agent of the plaintiff for some years prior to the time of the payment in question. It is plaintiff's claim that this agency had been discontinued and that Millikin was no longer authorized to collect for the plaintiff. It is also contended by the plaintiff that the payment was made by the defendant's agent, one Hankison, to Millikin for the fraudulent purpose of having Millikin convert a portion of the funds thus turned over to him to pay Hankison a personal debt which Millikin owed him. The defendant, on the other hand, adduced evidence to prove that the agency of Millikin to collect premiums had continued and was specifically authorized by officers of the plaintiff; that while Millikin used a portion of the funds thus paid him to pay his personal debt to Hankison, it was paid out of commissions presumably due him and was entirely proper.

In order to understand the case, it is necessary to refer briefly to a previous decision of this court in *Hartford Accident & Indemnity Co. v. Mutual Trucking Co.*, 337 Ill. App. 140, from which it appears that after the institution of the suit by the insurance company against the trucking company, the trucking company impleaded Millikin and Fred S. James & Co., a corporation transacting business as insurance agents, the general agent of the plaintiff. In that case, the court denied a motion by plaintiff for summary judgment against the trucking company, but entered a summary judgment in favor of plaintiff against the

175

third party defendants, Millikin and Fred S. James & Co., for the sum of $11,239.81, that being the amount admittedly here involved. This court held that the trial court was without power to enter such a judgment upon the motion which was then before the court; that plaintiff had a right to a trial upon the merits, and reversed the judgment. The case being reinstated on the calendar, by agreement of the parties the issue between the plaintiff and defendant was segregated from the controversies between the other defendants. The case was tried on its merits, and evidence was adduced consisting of testimony and written documents. At the conclusion, the court found the issues in favor of the defendant, and the only question before us is whether that finding is against the manifest weight of the evidence.

Millikin entered the employ of Fred S. James & Co., general agent of the plaintiff, on January 1, 1936, as manager of its marine department. He solicited the defendant's business in June or July of that year and in 1939 procured insurance for them from the plaintiff. Premiums on workmen's compensation policies are based on payrolls, and some time at the end of 1942 an audit of the payrolls furnished Millikin was made and the amount due determined.

From the commencement of the period the policies took effect, premiums were paid by personal checks to Millikin, who would then deduct his commissions and give his personal checks to the general agent, Fred S. James & Co. Millikin left the employ of Fred S. James & Co. about July 1, 1943 and a dispute over commissions due him arose between him and Fred S. James & Co. Millikin continued the service he had previously rendered with respect to checking payroll reports and other matters connected with the policies, and after leaving Fred S. James & Co., he became

176

associated with Moore, Case, Lyman & Hubbard, also general agents for the plaintiff. Three officials of the plaintiff, one Keller, Superintendent of Credits & Accounts, Reitze, Assistant Manager of the Western Department, and Malone, vice-president and head of the Chicago office, asked Millikin to collect the moneys due from the defendant. It also appears that Hankison, agent of the defendant, who represented the defendant in its dealings with the plaintiff, had conversations with Keller and was instructed by him to pay the amount due the plaintiff to Millikin. These conversations were not denied by either Keller, Reitze, or Malone. There is one possible exception, and that is a denial by Reitze that he had directed Millikin to collect any account for Fred S. James & Co. However, on the basis of the uncontroverted testimony with respect to other conversations and evidence of the dealings generally, the court was warranted in finding that Millikin was authorized to collect.

 There remains to be considered the second question presented by plaintiff, that is, that Hankison made payments due the plaintiff to Millikin in order that he might procure from Millikin payment of a personal indebtedness of $2,293. In discussing this matter, the conscientious and able trial judge said: ''I grant you there was a little disturbing factor in my thinking in reference to what went on between Millikin and Hankison but when you analyze the whole evidence and realize that Millikin was dealing with James on the basis of an open account and these checks were made to him and he in turn made his checks, I didn't think that was sufficient to justify my saying that there was something that would take away this payment as being a genuine payment. . . .'' It is obvious that what the trial judge meant was that the plaintiff had permitted its agent to handle these accounts on a

177

debtor and creditor basis, that is, it did not require its agent to procure payments of premiums by checks made payable to the plaintiff and leave it to the plaintiff to pay the agent's commissions, but the course of dealings over a period of five years had been for the agent to collect the premiums by personal checks to him and then to account to the plaintiff for whatever moneys might be owing it after deduction of his commissions. This version of the transaction is derived from the testimony of Millikin and Hankison. When Hankison, having been directed to pay Millikin the money, talked to Millikin about the matter, he suggested that inasmuch as Millikin was to deduct his commissions, he would have funds with which to repay the debt owing Hankison, and that if he would pay it, he, Hankison, would have two checks made out, one for the amount owing him by Millikin, to-wit, $2,293, which Millikin could turn back to him, and the other for the balance. Plaintiff makes much of the previous opinion of the court in which we made reference to Hankison's good faith, but this court did not intend at that time to find that the transaction was in bad faith. This court was referring only to the claim made by the plaintiff. The trial court heard the evidence and has found otherwise, and that finding is amply supported by the evidence.

The fact is to be noted that while the plaintiff contends that Millikin's agency was specifically revoked, nowhere is there to be found any formal revocation. It is only from inference derived from correspondence between Fred S. James & Co. and Millikin that this argument is made, and this is overcome by the substantial evidence of direct authority to collect the premiums.

Plaintiff argues that Millikin was, in fact, the agent for the defendant; that he rendered services to the defendant in connection with the insurance. This, no

doubt, he was taught and encouraged to do as part of the general duties of an insurance agent, but in the collection of premiums, he was the plaintiff's agent. *Pulaski Mut. Fire Ins. Co. v. Dawson & Boatman,* 87 Ill. App. 514; *Roy Iverson Co. v. United States Lloyds, Inc.,* 251 Ill. App. 150.

In our opinion, the finding of the court was not against the manifest weight of the evidence.

*Judgment affirmed.*

FRIEND and SCANLAN, JJ., concur.