95 N.J. Super. 279 (1967)
230 A.2d 892
MOUNT VERNON FIRE INSURANCE COMPANY, A CORP. OF THE STATE OF PENNSYLVANIA, AND QUAKER AGENCY, INC., A CORP. OF THE STATE OF NEW JERSEY, PLAINTIFFS-APPELLANTS,
v.
DAVID GILLIAN, IRENE GILLIAN, ROBERT GILLIAN, LILLIAN GILLIAN, ROY GILLIAN AND JEAN GILLIAN, T/A GILLIAN AMUSEMENT CO., INC., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted March 13, 1967.
Decided June 8, 1967.
*280 Before Judges CONFORD, FOLEY and LEONARD.
Messrs. Friedman & D'Alessandro, attorneys for appellants (Mr. Edward G. D'Alessandro on the brief).
Messrs. Carpenter, Bennett & Morrissey, attorneys for respondents (Mr. Jerome J. Graham, Jr. of counsel).
The opinion of the court was delivered by FOLEY, J.A.D.
This is an action by an insurance carrier and its agent to recover unpaid premiums from an insured.
In the spring of 1961 defendants, New Jersey residents, advised Frederick M. Hudson (Hudson), a broker in Philadelphia licensed to do business in New Jersey, of their desire to obtain a comprehensive liability insurance policy. Unable to place this risk himself, Hudson contacted Excess Underwriters, Inc. (Excess), a Pennsylvania corporation licensed as a broker in New Jersey. Excess placed the insurance with the Mt. Vernon Fire Insurance Company (Mt. Vernon), a Pennsylvania corporation, through its New Jersey agent, Quaker Agency, Inc. (Quaker), a New Jersey corporation.
The policy was mailed to Excess by Quaker, accompanied by a bill for the gross amount less the commission Quaker agreed to pay Excess. Evidently the policy was transmitted to defendants through Hudson, along with the latter's bill for the premium. The total amount of the premium due was $5,470.66. At trial, full payment from defendants to Hudson was proven, and likewise full payment from Hudson to Excess was demonstrated. However, Quaker received only $3,000 *281 from Excess. Plaintiffs bring this action on the theory that Excess, as a broker, was the agent of the insured and therefore any default by Excess would be chargeable to the insured.
The trial court perceived a choice of law problem between Pennsylvania and New Jersey and resolved it under the "most significant contacts" approach. Cf. Auten v. Auten, 308 N.Y. 155, 160, 124 N.E.2d 99, 101-102, 50 A.L.R.2d 246 (Ct. App. 1954). Taking this approach the court ruled that Pennsylvania law controlled. Accordingly, it held that where a broker is entrusted by the insurer with the delivery of the policy, the insured in making payment may safely rely upon the implied authority of the broker to collect the premium as an agent of the insurer, citing Transcontinental Oil Co. v. Atlas Assur. Co., Ltd., 278 Pa. 558, 123 A. 497 (Sup. Ct. 1924); Pearl Assur. Co., Ltd. v. National Ins. Agency, Inc., 150 Pa. Super. 265, 28 A.2d 334 (Super. Ct. 1942).
The "most significant contacts," or "center of gravity," test has not been adopted in this State by an appellate court in a contract action, although it was recently resorted to in a tort action. See Mellk v. Sarahson, 49 N.J. 226 (1967). However, the test has been discussed with approval by our Supreme Court in a contract situation. See Kievit v. Loyal Protect. Life Ins. Co., 34 N.J. 475, 492-493 (1961). There, the court decided that the conflicts problem did not require resolution because there was no difference in the Massachusetts and New Jersey law on the question in issue. In view of our holding infra that New Jersey law concerning the authorization of a broker to receive premiums does not differ in substance from the law of Pennsylvania we, likewise, find it unnecessary to pass on the merits of the conflicts question.
There is no doubt that since the passage of N.J.S.A. 17: 22-6.2a the broker to whom the insurer delivers the policy is authorized by the insurer to receive payment of the premium. However, the effective date of that statute is subsequent to the incidents giving rise to this action. There are no reported cases in New Jersey definitive of the common law on this precise question prior to the date of the statute.
*282 Plaintiffs rely on N.J.S.A. 17:22-6.1 and 17:22-6.2, defining insurance agent and insurance broker, respectively. The latter statute defines an insurance broker as one "who shall act or aid in any manner in negotiating contracts of insurance or soliciting or effecting insurance as agent for an insured or prospective insured." (Emphasis added.) Plaintiffs argue that under this statute Excess must be deemed defendants' agent, not their own. But we think such a statute is not necessarily determinative of the instant problems in the factual context here presented.
Other jurisdictions, when confronted with similar statutes, have construed them so as not to apply to characterize the agency of the broker in the collection of premiums when the insurer has entrusted the broker with the delivery of the policy. For example, in Midwest Transfer Co. v. Preferred Acc. Ins. Co., 342 Ill. App. 231, 96 N.E.2d 228 (App. Ct. 1951), the court said:
"One of the points made by defendant related to Sec. 588, Ch. 73 of the Insurance Act as it existed in 1946, which defines a broker as one who acts on behalf of the insured. This does not mean that one who is a broker or holds himself out to be a broker cannot be the agent of the insurance company for the purpose of collecting premiums. Roy Iverson Co. v. United States Lloyds, Inc., 251 Ill. App. 150; Hartford Accident & Indemnity Co. v. Mutual Trucking Co., 342 Ill. App. 174, 96 N.E.2d 105. Nor does it mean that defendant could issue policies requiring deposits of $25,000, arrange for their delivery to the insured, make no inquiry thereafter as to whether the deposits had been paid by the insured to the man who delivered the policies, keep an open account with the man who is alleged to be a broker and then seek to hold the insured when the default of the alleged broker is disclosed." (96 N.E.2d, at p. 230)
In Maloney v. Rhode Island Ins. Co., 115 Cal. App.2d 238, 251 P.2d 1027 (D. Ct. App. 1953), the court interpreted a statute defining the broker as one who transacts insurance with, but not on behalf of, an insurer. Cal. Ins. Code § 33. There, the court held that the broker acts in a dual capacity. In procuring the policy he is not the insurer's agent. But when the policy is forwarded to the broker for delivery to the *283 insured, and when the insured pays the premium to the broker for remittance to the company, the broker became an agent of the insurer for that purpose. As the court said, "the actual relationship is determined by what the parties say and do, not by the name they are called." 251 P.2d, at p. 1031. Accord, Moone v. Commercial Cas. Ins. Co., 350 Ill. App. 328, 112 N.E.2d 626, 628 (App. Ct. 1953). See also Transcontinental Oil Co. v. Atlas Assur. Co., Ltd., supra. Thus, the general principle of law is as enunciated in 15 Appleman, Insurance Law and Practice, § 7985, p. 236:
"Accordingly, where the policy is entrusted by the company to the broker for delivery to the insured, it is generally presumed that the broker is regarded as the insurer's agent for the purpose of receiving premium payments."
While there are no cases in New Jersey enunciating that specific principle, we see no reason why it should not be followed here especially in view of the recent enactment by our Legislature of N.J.S.A. 17:22-6.2a, supra. We hold that statute to be a codification of existing New Jersey common law. Such a result is in accord with general principles of apparent and implied agency long recognized in New Jersey, as for example:
"The factual question is whether the principal has by his voluntary act placed the agent in such a situation that a person of ordinary prudence, conversant with business uses, and the nature of the particular business, is justified in presuming that such agent has the authority to perform the particular act in question." Mesce v. Automobile Ass'n of New Jersey, 8 N.J. Super. 130, 135 (App. Div. 1950).
See also Price v. Old Label Liquor Co., 23 N.J. Super. 165, 169 (App. Div. 1952); Restatement, Agency 2d, § 71, p. 183.
Affirmed.