104 N.J. Super. 419 (1969)
250 A.2d 163
SEABROOK FARMS, INC.,, PLAINTIFF,
v.
COMMERCIAL INSURANCE COMPANY OF NEWARK, N.J., DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided February 5, 1969.
*421 Mr. Samuel P. Orlando for plaintiff (Messrs. Orlando & Cummins, attorneys).
Mr. Peter J. Devine, Jr. for defendant (Messrs. Kisselman, Devine, Deighan & Montano, attorneys).
WICK, J.S.C.
This is a declaratory judgment action in which the insured, Seabrook Farms, Inc. (hereinafter Seabrook), seeks a determination that the insurer, Commercial Insurance Company of Newark, N.J. (hereinafter Commercial) was not legally justified in cancelling Seabrook's insurance policy because of alleged nonpayment of premiums where, in fact, Commercial's agent failed to remit such premiums. By its counterclaim Commercial seeks payment of $25,000, which it claims is the portion of the premium chargeable to Seabrook.
Based on the evidence presented at trial I find the relevant facts to be the following: From 1960 to 1966 Parkwood Company (hereinafter Parkwood), an insurance brokerage company incorporated in New Jersey, was authorized by Seabrook to secure virtually all types of its insurance coverage. John Apgar, the president and chief stockholder of Parkwood, handled Seabrook's insurance matters with the carriers through Donald G. McAllister, the general manager of Seabrook. It also appears from the testimony that at various times during the 15-year period prior to 1960 Apgar's relationship with the Seabrook enterprise had been *422 that of insurance advisor, insurance broker, executive, and even assistant to the president.
In April 1966 Apgar and McAllister held discussions regarding the expiration on May 1, 1966 of a three-year comprehensive business insurance policy held by Transamerica Insurance Company and which had been procured by Apgar. At this time McAllister instructed Apgar to secure proper insurance coverage in a company other than Transamerica. Soon thereafter Apgar informed McAllister that it would be necessary to have a check for $15,000 as an advance on premiums because some of the prospective insurers wanted some security in light of the financial difficulties one of the Seabrook subsidiaries was experiencing. Thus, on April 28, 1966 Seabrook issued to Apgar a check for $15,000 payable to Parkwood for "Advance on Policies  Dwellings, Liability, and Fire." In this regard Apgar contacted several insurance carriers who declined to insure Seabrook; however, he did manage to get Selected Risks to assume temporary coverage from May 1, 1966 to June 10, 1966.
On June 2, 1966 Seabrook sent a second check to Apgar in the amount of $10,000, also payable to Parkwood as an advance on premiums. I have concluded from the evidence that it was on or about June 7, 1966 that Commercial had its first indirect contact with either Parkwood or Seabrook. At that time Commercial, through one of its agents other than Parkwood, agreed to accept the coverage of Seabrook subject to the approval of the underwriting committee. On June 10, 1966 Commercial issued a temporary binder, and on the same date Apgar was designated as an authorized agent for Commercial (as evidenced by a certificate to this effect filed with the New Jersey Commissioner of Banking and Insurance). Commercial extended its binder until December 5, 1966, at which time it issued the comprehensive business policy which is the subject of this suit. Commercial sent the policy to Apgar by mail, and he hand delivered the policy to McAllister on December 7, 1966, together with an invoice for $60,000, the total premiums for three years. *423 McAllister drew a check payable to Parkwood Company in the amount of $35,000 which, added to the $25,000 already advanced by Seabrook, constituted payment in full of the premium due. Apgar gave a receipted bill to McAllister.
None of the check payments made by Seabrook to Parkwood was transmitted to Commercial. Consequently, on June 27, 1967 Commercial notified Seabrook that the policy was being cancelled for nonpayment of premiums. Several days later Commercial reinstated the policy on a mutual agreement between Seabrook and it, but it has continued to hold Seabrook liable for $25,000 of the premiums while recognizing that it would be responsible for $35,000 of them.
Seabrook takes the position that Parkwood, through its agent John Apgar, was either the agent or broker of Commercial; that as such Parkwood was authorized by Commercial to deliver the business insurance policy to Seabrook; that the delivery of the policy gave Parkwood the authority to collect the premium; that Seabrook did in fact make three premium payments to Parkwood in checks in the amount of $15,000, $10,000 and $35,000, respectively, and that therefore Commercial received full payment of the premium. As support for this proposition Seabrook relies on decisions in several jurisdictions and on N.J.S.A. 17: 22-6.2a, which deal with the authorization entitling an agent or broker to receive insurance premiums on behalf of an insurer.
Defendant Commercial, on the other hand, concedes liability with respect to the premium payment made to Parkwood on December 7, 1966, but it argues that the two previous payments of April 28 and June 2, 1966 should not be charged to it because no principal-agent or insurer-broker relationship existed at those times. Commercial maintains its position, whether Parkwood is determined to be an agent or a broker. See N.J.S.A. 17:22-6.1 and 17:22-6.2.
Under common-law principles of agency, when an insurer entrusts an insurance policy to an agent for the purpose of delivering the policy to and collecting the premiums *424 from the insured, the insured's payment of such premiums to the agent is deemed payment to the insurer. Reck v. Prudential Ins. Co., 116 N.J.L. 444 (Sup. Ct. 1936); 44 C.J.S. Insurance § 272, p. 1084. Moreover, the mere delivery of the policy to the agent is generally held to establish the agent's implied or apparent authority to collect the premium for the insurer. Bohlinger v. Ward & Company, 34 N.J. Super. 583, 591 (App. Div. 1955); Appleman, Insurance Law and Practice, § 7985, p. 236. Thus where an insurance company enabled the party to solicit and deliver automobile, fire and liability policies, the court held that the party had the appearance of an agent authorized to collect the premiums; therefore, the company would be liable to the insured for the unearned premiums on a cancelled policy, notwithstanding that it did not receive the premiums which had been paid by the insured to the agent. Zriny v. Hartford Fire Ins. Co., 10 N.J. Misc. 181, 158 A. 430 (Sup. Ct. 1932). Similarly, where the insurer entrusts a broker with a policy which is to be delivered to the insured, New Jersey courts charge the insurer with responsibility for the premiums. Mt. Vernon Fire Ins. Co. v. Gillian, 95 N.J. Super. 279 (App. Div. 1967).
In the present case neither the foregoing rules nor the authorities relied upon by plaintiff in support of its position are dispositive of the issue in question. Here the issue involves the alleged liability of the insurer, Commercial, for premimus paid to the agent Parkwood prior to the delivery of any insurance policy or binder and prior to any acts establishing a principal-agent relationship between Parkwood or Apgar and Commercial. On the other hand, in all the cases cited by plaintiff in its brief the facts or events (i.e., delivery of the policy, designation of person as registered agent of insurer), which gave rise to the agent's implied or apparent authority to receive the premiums, preceded the actual or constructive receipt of payment by the agent. Zriny v. Hartford Fire Ins. Co., supra; Transcontinental Oil Co. v. Atlas Assurance Co., 278 Pa. 558, 123 A. 497 (Pa. *425 Sup. Ct. 1924); Pearl Assurance Co. v. National Ins. Agency, 150 Pa. Super. 265, 28 A.2d 334 (Pa. Super. Ct. 1942); Norwalk Tire & R. Co. v. Manufacturers' Casualty Ins. Co., 145 A. 44 (Conn. Sup. Ct. Err. 1929); Hartford Accident and Indemnity Co. v. Cooper Park Development Corp. (unreported, U.S. Dist. Ct. N.J. 1948); Mt. Vernon Fire Ins. Co. v. Gillian, supra. Accordingly, the insurer's responsibility for premiums is prospective in point of time from the creation of the agency relationship. The agency does not operate retroactively so as to charge an insurer for any monies received by the agent from the insured prior to the date which the agency was effective.
Based on these generally accepted principles of actual and apparent authority, cf. Restatement, Agency 2d, §§ 7, 8 (1958), I hold that Commercial did not authorize Parkwood or Apgar to collect any premiums prior to June 10, 1966 because I find no evidence of a principal-agent relationship before that date. The check payments sent to Parkwood on April 28 and June 2, 1966 should be charged against Seabrook. However, the check payment made December 7, 1966 should be charged to Commercial.
Plaintiff urges that N.J.S.A. 17:22-6.2a (L. 1966, c. 50, § 1) compels a different result. This statute provides the following:
"Any insurer which delivers in this State to any insurance broker a contract of insurance (other than a contract of life insurance, or life, accident or health insurance) pursuant to the application or request of such broker, acting for an insured other than himself, shall be deemed to have authorized such broker to receive on its behalf payment of any premium which is due on such contract at the time of its issuance or delivery or payment of any installment of such premium or any additional premium which becomes due or payable thereafter on such contract, provided such payment is received by such broker within 90 days after the due date of such premium or installment thereof or after the date of delivery of statement by the insurer of such additional premium."
As pointed out in Mt. Vernon Fire Ins. Co. v. Gillian, supra, at p. 283, the statute is a codification of existing New Jersey *426 common law. Accordingly, the reasoning set forth previously with respect to the absence of an insurer's responsibility for payments received by the agent prior to the creation of an agency relationship should be applicable here.
The only other case construing the above New Jersey statute is Kubeck v. Concord Insurance Co., 103 N.J. Super. 525 (Ch. 1968); but that case is distinguishable from the instant one. There Kubeck, the insured, sought a judgment to compel Concord Insurance Company to reinstate an automobile liability policy which had been cancelled for alleged nonpayment of premiums. According to the findings of fact, Kubeck went to the office of the insurance broker in July 1966. At that time one of the principals of the brokerage company indicated that he would place the insurance with Concord. Subsequently Concord issued the policy to Kubeck through the broker, who delivered it but did not attach an invoice. In late August the broker billed Kubeck, who sent the premium payment, but the payment was never remitted to Concord. Thus, Concord sent a notice of cancellation to Kubeck on October 6, 1966.
Judge Matthews held that the cancellation of the policy was void and unenforceable for the reason that under N.J.S.A. 17:22-6.2(a) the insurer is charged with receipt of a premium where the broker is entrusted with the delivery of the policy to the insured and, under the avowed practice of the insurer, was responsible for the collection of the premium from Kubeck and the payment of same to the insurer. With respect to the purpose of the statute the court pointed out:
"* * * N.J.S.A. 17:22-6.2a, was enacted to protect the insurance buying public from the misappropriation, conversion, or other misconduct of an insurance broker in those instances where an insurer uses the broker to effect the delivery of the policy of insurance and to collect the premiums due for it. The statute clearly creates a principal-agent relationship between the insurer and the broker in those instances where the insurer uses the broker to deliver a policy of insurance and collect and remit premiums due thereon." *427 Measured against the statutory policy, the facts in the instant case show that Seabrook was in a better position than Commercial to protect itself against misappropriation since it had prior dealings with Parkwood and Apgar for a number of years and had advanced Parkwood $25,000 before Commercial had any contact with any of these persons.
The case of Zak v. Fidelity Phenix Ins. Co., 58 Ill. App.2d 341, 208 N.E.2d 29 (App. Ct. 1965), affirmed on other grounds, 34 Ill.2d 438, 216 N.E.2d 113 (Sup. Ct. 1966), is distinguishable from the instant case because it did not involve payments made by a prospective insured to one who subsequently established a broker or agent relationship with the insurance carrier. A case which is more on point is Lezak v. National Grange Mutual Ins. Co., 233 N.Y.S.2d 607 (Sup. Ct. 1962). There the insurance company issued an automobile policy to the insured through a licensed insurance broker in December 1957. The policy was renewed in December 1958 through the broker. Then, in November 1959, the insured sent a check to the broker in the amount of the premium for a second renewal (starting December 1959). The broker never paid the last premium to the insurance company; consequently, the policy was cancelled in February 1960. Plaintiff sued for a judgment, declaring his insurance policy was effective. He relied on a New York statute (Insurance Law, McKinney's Consol. Laws, c. 28, § 121), almost identical to N.J.S.A. 17:22-6.2a.
The court discussed the common-law agency rules, referred to the statute and stated:
"The authority of the broker to act in his dual capacity, under the above section, extends only to the period in which the policy remains in force and after its delivery to him * * *. It necessarily excludes the period between which the broker is engaged by the prospective insured to secure a policy of insurance and the receipt of the policy from the insurer by the broker. During this interval he is in privity solely with his customer and does not establish any privity with any insurance company until the latter impliedly consents to his collection of the premium by delivering the policy of insurance to him." (at p. 609)
*428 I do not necessarily agree with the result in Lezak, but I do believe the foregoing statement should be applied to this case.
Based on the foregoing, a judgment on defendant's counter-claim for $25,000 should be entered.