103 N.J. Super. 525 (1968)
248 A.2d 131
WILLIAM KUBECK, PLAINTIFF,
v.
CONCORD INSURANCE COMPANY, A CORPORATION; FLAHERTY, SHEEDY & RYAN, INC., A CORPORATION OF THE STATE OF NEW JERSEY; THOMAS M. FLAHERTY, JOHN J. SHEEDY AND JOHN P. RYAN, DEFENDANTS, AND ESTATE OF JOHN C. PERS, ROBERT RADUMSKY, MICHAEL ZVINAKIS, AGNES REA, MICHAEL E. COBB, COUNTY OF HUDSON AND/OR PUBLIC SERVICE ELECTRIC & GAS COMPANY, PROPER, NECESSARY OR INDISPENSABLE PARTIES TO THIS SUIT.
Superior Court of New Jersey, Chancery Division.
Decided November 25, 1968.
*526 Mr. Leon Miroff for plaintiff (Mr. Hyman Tobin, attorney).
Mr. James F. McGovern, Jr., attorney for defendant Concord Insurance Company (Mr. John P. Doran, appearing).
Mr. Allan Maitlin for defendant Flaherty, Sheedy & Ryan, Inc. (Messrs. Feuerstein & Sachs, attorneys).
MATTHEWS, J.S.C.
In this action plaintiff seeks a judgment directing defendant Concord Insurance Company to reinstate a certain automobile liability insurance policy issued to him by Concord in July of 1966, and to require Concord to *527 defend him against certain claims asserted by third parties for damages arising out of an automobile accident. Claims for alternate relief have been asserted against Flaherty, Sheedy & Ryan, Inc., the broker who placed the policy in question, and against the principals of that corporation, Thomas M. Flaherty, John J. Sheedy and John P. Ryan, individually. Subsequently, by leave of court the complaint was amended to include defendants Pers, Radumsky, Zvinakis, Rea, Cobb, County of Hudson and Public Service Electric & Gas Company as persons being interested in the action in that each had a damage claim against plaintiff arising out of the automobile accident aforementioned.
I find the following facts. Plaintiff, who was then 22 years of age, purchased a new motor vehicle during the month of July 1966. During the course of negotiations with the automobile dealer over the method of financing the purchase he was advised that he would have to have both collision and liability insurance coverage. At the suggestion of the automobile dealer, and accompanied by one of its representatives, plaintiff went to the offices of defendant Flaherty, Sheedy & Ryan, Inc. (hereinafter broker) for the purpose of obtaining the insurance. At the broker's he conferred with defendant John Ryan, one of its principles. Ryan advised plaintiff that he would place his insurance with defendant Concord Insurance Company in Newark and that the annual premium would amount to $283. Shortly thereafter plaintiff completed the purchase of the motor vehicle and received an automobile liability insurance policy issued by defendant Concord through defendant broker. No bill accompanied the policy. During the latter part of August 1966 plaintiff received a communication from the broker reminding him that the premium was due on the Concord policy. Plaintiff immediately called the broker and talked to Ryan. He informed Ryan that he had misunderstood him at their meeting and that he thought the liability insurance premium would be included in the monthly car payments, as the collision insurance *528 was included. Ryan then offered to finance the liability insurance premium in the event plaintiff could not make the payment due at that time. Plaintiff informed Ryan that he would pay the premium in full immediately, and shortly thereafter sent to the broker a money order in the amount of $283, representing full payment. Payment was received September 3, 1966.
On October 6, 1966 Concord mailed a notice of cancellation to plaintiff, to be effective October 16, 1966. The notice of cancellation contained a rubber-stamped legend advising the recipient to see his broker immediately. On receipt of the notice of cancellation plaintiff called Ryan. Ryan advised him to come into the office the next day. Plaintiff did so. After seeing the notice of cancellation, Ryan informed plaintiff that he did not understand why the policy was to be cancelled. Ryan then, in plaintiff's presence, dialed a number on the telephone and apparently talked to someone in the Concord office in Newark. After Ryan hung up he informed plaintiff that his policy was still in effect and that the notice of cancellation was due to a clerical error. He further informed plaintiff that he would personally see to the reinstatement and that the same should be effective in approximately one week. When plaintiff did not hear from Concord as to the reinstatement after the expiration of a week, he called Ryan again. Ryan informed plaintiff over the telephone that he was going to Newark personally and that he would check on it. Hearing nothing, after the expiration of another week or so plaintiff called Concord directly. He was connected with the underwriting department, where someone informed him that his policy had been cancelled at the request of his broker. After talking to Concord plaintiff immediately got in touch with Ryan and thereafter went to the broker's office. He informed Ryan of his telephone conversation with Concord and Ryan ostensibly again called Concord in his presence. During that telephone conversation Ryan stated to the person at the other end of the telephone that *529 he had not requested the policy to be cancelled. After Ryan hung up, he wrote out a statement on a sheet of the broker's stationery, stating that the policy in question was still in effect. During the month of December 1966 plaintiff was involved in an automobile accident in New York State. Upon returning home he immediately called Concord to report the accident. Since it was after business hours, the recipient of the call, upon ascertaining that no one was injured, advised plaintiff to call back in the morning or get in touch with his own broker. Plaintiff called Ryan the next morning, and then a few days later went to the broker's office. At that meeting Ryan helped plaintiff fill out a New York accident form and informed him that he would notify Concord of the accident. Plaintiff was apparently faultless in the New York State accident since his vehicle was repaired by the insurance company covering the other vehicle involved in the accident.
In January 1967 plaintiff again went to see Ryan, accompanied by a friend who had some knowledge of the insurance industry. Plaintiff and his companion informed Ryan that they could not understand why no formal reinstatement had been received from Concord despite the representations that had been made by Ryan. Ryan again called Concord in the presence of plaintiff and his companion. After a conversation on the telephone he hung up and informed both plaintiff and his companion that plaintiff was still insured by Concord. Ryan also informed plaintiff and his companion that he could not understand why the reinstatement had not been sent by Concord.
Again, early in February 1967, plaintiff called Ryan to remind him that he had not received formal reinstatement of the policy. Ryan told plaintiff that he was going to Newark to attend to the matter personally. On February 27, 1967 plaintiff was involved in a motor vehicle accident in which one person was killed and two others were injured. Concord, on being informed of the accident, refused to defend *530 on the ground that its policy had been cancelled on October 16, 1966.
There is no question but that defendant broker received the premium payment of $283 from plaintiff on September 3, 1966. At the trial Ryan conceded the receipt of the premium and also that a bookkeeping error originating in his office had included plaintiff's policy on a list of policies to be cancelled which was mailed to Concord at the end of September 1966. Despite this concession, Ryan concedes that no written request was made by him or his firm to Concord for the reinstatement of plaintiff's policy.
Defendant Concord, through one of its representatives, informed me at trial that it does not sell insurance directly to the insured public. All matters dealing with the payment of premiums are confined by relationships between the company and brokers, such as defendant broker. In short, no direct contact is ever had between Concord and an insured relative to the payment of premiums. In this regard, evidence was introduced to show that Concord subsequently sued defendant broker for a number of premiums claimed to be due to it from the broker, including the earned portion of the premium due on plaintiff's policy. That suit was terminated by a compromise lump sum payment covering all of the claimed premiums in that action.
Concord's position in this matter may be stated simply. It contends that since it cancelled the policy in question, it is free of any obligation under the contract. Further, once it had cancelled the contract, no actions of the broker could have any effect on the status of the policy.
The resolution of this problem lies in the construction of the provision of N.J.S.A. 17:22-6.2a (L. 1966, c. 50, § 1). The statute reads as follows:
"Any insurer which delivers in this State to any insurance broker a contract of insurance (other than a contract of life insurance, or life, accident or health insurance) pursuant to the application or request of such broker, acting for an insured other than himself, shall be deemed to have authorized such broker to receive on its behalf *531 payment of any premium which is due on such contract at the time of its issuance or delivery or payment of any installment of such premium or any additional premium which becomes due or payable thereafter on such contract, provided such payment is received by such broker within 90 days after the due date of such premium or installment thereof or after the date of delivery of statement by the insurer of such additional premium."
There are no New Jersey cases construing these statutory provisions.
The State of New York has a statute (§ 121, Insurance Law, McKinney's Consol. Laws, c. 28) which is the same as ours, except for the parenthetical insertion in our statute which excludes life insurance and health and accident insurance from its provisions. The New York statute was cited in Standard Accident Insurance Co. v. Roth, 28 Misc.2d 1080, 213 N.Y.S.2d 721 (Sup. Ct. 1961) and Lezak v. National Grange Mutual Insurance Co., 233 N.Y.S.2d 607 (Sup. Ct. 1962). In Standard Accident the insured failed to pay the second installment of his premium to the company, and the company sent a notice of cancellation directly to the insured. The insured then sent the amount of the second installment to the broker, who failed to remit. The New York Supreme Court found that there was no authority under the statute giving the broker the power to extend the time of payment of a premium, or to reinstate a policy which had been cancelled by the insurer.
In Lezak plaintiff obtained an automobile liability insurance policy from the defendant through a broker. A second renewal policy was issued after expiration of the first. As the term of the renewal policy was drawing to a close, plaintiff sought another renewal. For the second renewal plaintiff drew a check in the amount of the required premium to the order of the broker. The broker deposited the insured's check into his account and forwarded his own check to the company. Upon receipt of the check defendant issued the second renewal of the policy. Approximately one month later its broker's check was returned to the defendant for insufficient funds. Thereupon defendant issued a notice of *532 cancellation to plaintiff. Plaintiff was thereafter involved in an automobile accident and the company refused to defend on the grounds that the policy had been cancelled. The New York court found in favor of the company. In interpreting the statute, the justice stated that the authority of the broker to act in his dual capacity extended only to the period in which the policy remained in force and after its delivery to him. The statute, according to the justice, necessarily excluded the period between which the broker is engaged by the prospective insured to secure policies of insurance and the receipt of the policy of the insured by the broker. During this interval, it was the New York court's opinion, the broker is in privity solely with his customer and did not establish a privity with his insurance company until the company impliedly consented to the collection of the premium by the broker by delivery of a policy of insurance to him.
I believe all the facts and the reasoning stated by the court in both the New York cases are clearly distinguishable from the facts presently before me.
In Zak v. Fidelity-Phenix Insurance Company, 58 Ill. App.2d 341, 208 N.E.2d 29 (App. Ct. 1965), affirmed on other grounds, 34 Ill.2d 438, 216 N.E.2d 113 (Sup. Ct. 1966), the courts of Illinois had before them a case factually strikingly similar to those presently before this court, except for the misappropriation of the premium by the broker found in that case. In Zak the Appellate Court held that the provision for cancellation of the policy, no matter how broadly phrased therein, could not be used to circumvent the Illinois statute (which is substantially the same as our statute) enacted to protect the insuring buying public, where it was shown that the sole reason for cancellation of the policy was the nonpayment of premium which, in fact, the insurance broker had misappropriated for his own use. On appeal to the Supreme Court of Illinois, that court did not pass on the reasons asserted by the intermediate appellate court, but confirmed the liability of the insurance company on the grounds of estoppel.
*533 There is no question but that the New Jersey statute, N.J.S.A. 17:22-6.2a, was enacted to protect the insurance buying public from the misappropriation, conversion, or other misconduct of an insurance broker in those instances where an insurer uses the broker to effect the delivery of the policy of insurance and to collect the premiums due for it. The statute clearly creates a principal-agent relationship between the insurer and the broker in those instances where the insurer uses the broker to deliver a policy of insurance and collect and remit premiums due thereon. Under the facts hereinabove set out, the event which caused the cancellation of the policy in question was the failure of the broker to remit to the insurance company the premium paid by the insured to it. The broker here was in fact entrusted with the delivery of the policy to the insured and, under the avowed practice of the insurer, was responsible for the collection of the premium from plaintiff and the payment of same to the insurer. Plaintiff performed all that was required of him. A breakdown in the chain of events occurred by the failure of the broker to remit the premium paid by plaintiff to Concord and, in addition, by mistakingly directing the cancellation of the policy for nonpayment of premium. All of these events took place in the course of the broker acting as agent for the insurance company under the provisions of the statute in question. The breakdown in the chain of events illustrates the very type of situation the Legislature had in mind when it enacted the statute in question as a protection for the insurance buying public.
Concord contends, however, that it had an absolute right to cancel the policy in question, for any reason. Therefore, since the policy was cancelled by notice to the insured, no insurance was in effect at the time of the accident. Certainly, it must be recognized that the power of cancellation reserved in a policy of insurance is a contractual arrangement entered into between insurer and the insured. I find, however, that with respect to cancellation of a policy for nonpayment *534 of premium where in fact the premium has been collected by the broker as statutory agent for the insurer, such right of cancellation is to be circumscribed by the statutory provisions. In short, the burden of ascertaining whether the premium has in fact been paid must be placed on the insurer and not on the insured. This conclusion is borne out strikingly by the facts in this case. Despite the fact that plaintiff was informed directly (on his own inquiry) by Concord that his policy had been cancelled, he was constantly reassured by defendant broker that that advice was a mistake and that his policy was reinstated. All of these reassurances came within the context of plaintiff's knowledge that he had in fact paid a full year's premium to the broker and that the broker had in turn delivered a policy of insurance to him. It is also apparent that the sole reason for the cancellation of the policy was alleged nonpayment of premium. Under these circumstances it would be grossly inequitable to find that the insured is placed in a position of having his policy cancelled because of the negligent act of the agent of the insurer. N.J.S.A. 17:22-6.2a.
One further observation should be made. No reason other than the alleged failure to pay premiums existed for the cancellation of the policy in question. Defendant insurance company would have itself placed in the position of one receiving a windfall because of the acts of its agent in failing to remit the premium and mistakingly ordering cancellation of the policy. The elimination of such a windfall cannot, under any stretch of the imagination, be regarded as prejudicial to the insurer.
It is my conclusion, therefore, that equity demands that I declare the cancellation of the policy in question, stated to be effective as of October 16, 1966, to be void and unenforceable. Accordingly, absent cancellation, the policy in question was in effect on February 27, 1967, the date of the accident mentioned above.