193 N.J. Super. 653 (1984)
475 A.2d 653
WALTER MILLNER, PLAINTIFF-RESPONDENT,
v.
NEW JERSEY INSURANCE UNDERWRITING ASSOCIATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 3, 1984.
Decided April 23, 1984.
*654 Before Judges KING and DREIER.
Hugh P. Francis argued the cause for appellant (Francis & Berry, attorneys).
David L. Ploshnick argued the cause for respondent (Ploshnick & Levine, attorneys).
The opinion of the court was delivered by KING, J.A.D.
This case presents the question whether N.J.S.A. 17:22-6.2a imposes liability upon the New Jersey Insurance Underwriting Association for the negligence of the broker of an applicant for insurance. This appeal has been taken by the Underwriting Association from a summary judgment granted in favor of the plaintiff applicant for insurance in the Law Division. We disagree with the Law Division's ruling, reverse and order judgment entered for defendant Underwriting Association.
The insured premises were located on Seventh Street in Paterson and had been insured under a fire policy issued by the defendant Underwriting Association effective June 7, 1979 to June 7, 1980 obtained through the LeCur Agency. Upon receipt of the expiration notice, plaintiff contacted LeCur and gave him a check for the renewal premiums on May 12, 1980. The application for continuation of the policy and the premium were not received by defendant until June 18, 1980. The fire had occurred on June 16.
The Law Division judge concluded that the case was controlled by N.J.S.A. 17:22-6.2a which protects the public where a broker is used by a carrier to collect premiums. He found *655 "that the broker was acting as the agent of the insurer when the premium and application were received by the broker in May of 1980."
Defendant is an association created by statute. Its membership consists of all insurance companies writing policies of property insurance in this State. N.J.S.A. 17:37A-3. The purpose of this legislation was to ensure that anyone with an insurable interest in real property in this State would be able to obtain adequate insurance coverage. N.J.S.A. 17:37A-1. The Legislature found that this concept of universal coverage was not possible in the open insurance market, particularly in urban areas. Ibid. Under the legislative plan, undesirable risks are fairly distributed among all insurance companies involved in this type of insurance. See N.J. Ins. Underwriting Assoc. v. Clifford, 112 N.J. Super. 195 (App.Div. 1970).
To be eligible for participation in this program, the applicant must demonstrate that: (1) he has failed to obtain insurance in the open market; (2) the property is insurable, and (3) there exists no outstanding premiums for other insurance on that property. N.J.S.A. 17:37A-8(a). If these conditions are satisfied and the premiums have been paid in advance, an insurance policy shall issue for a one-year term. N.J.S.A. 17:37A-8(b)(3). This policy shall be renewable annually "so long as the information contained in the original application remains valid." Ibid. The insured must submit an application for renewal, and pay the full premium in advance for the next year before the contract of insurance will be issued.
The issue here is whether N.J.S.A. 17:22-6.2a applies to and imposes liability on the defendant Underwriting Association in this circumstance. The statute states
Any insurer which delivers in this State to any insurance broker a contract of insurance (other than a contract of life insurance, or life, accident or health insurance) pursuant to the application or request of such broker, acting for an insured other than himself, shall be deemed to have authorized such broker to receive on its behalf payment of any premium which is due on such contract at the time of its issuance or delivery or payment of any installment of such premium or any additional premium which becomes due or payable thereafter *656 on such contract, provided such payment is received by such broker within 90 days after the due date of such premium or installment thereof or after the date of delivery of statement by the insurer of such additional premium.
In Kubeck v. Concord Ins. Co., 103 N.J. Super. 525 (Ch.Div. 1968), aff'd 107 N.J. 510 (App.Div. 1969), the court stated
There is no question but that the New Jersey statute, N.J.S.A. 17:22-6.2a, was enacted to protect the insurance buying public from the misappropriation, conversion, or other misconduct of an insurance broker in those instances where an insurer uses the broker to effect the delivery of the policy of insurance and to collect the premiums due for it. The statute clearly creates a principal-agent relationship between the insurer and the broker in those instances where the insurer uses the broker to deliver a policy of insurance and collect and remit premiums due thereon. [Id. 103 N.J. Super. at 533].
The statutory creation of an agency relationship between the insurer and the insured's broker was an important consideration. At common law, the broker was the agent of the insured for purposes of obtaining insurance. See Rider v. Lynch, 42 N.J. 465, 475 (1964). Consequently, a broker's negligence or misconduct in attempting to procure the policy was a matter between the insured and the broker. Ibid. If, however, the insurer subsequently entrusts that broker with delivery of the policy, an agency relationship arises between the insurer and the broker. Ibid. As a result of that relationship, the negligence or misconduct, e.g., misappropriation of premiums, of the broker in the performance of those functions can be attributed to the insurer. Mt. Vernon Fire Ins. Co. v. Gillian, 95 N.J. Super. 279, 282-283 (App.Div. 1967); see 3 Couch, Insurance 2d (1961), § 25:93 at 404. The court in Mt. Vernon indicated that N.J.S.A. 17:22-6.2a merely embodies these common law principles. 95 N.J. Super. at 283.
The critical element here is the requirement of a delivery of an insurance policy or contract of insurance to the broker. This never occurred here. Actual physical delivery is not necessary. See Global American Ins. Managers v. Perera Co., Inc., 137 N.J. Super. 377 (Ch.Div. 1975), aff'd o.b. 144 N.J. Super. 24 (App.Div. 1976). In Global, a policy was never delivered during the four years in which the insured had coverage with the insurer. Id. 137 N.J. Super. at 381-384, 387. The *657 existence of coverage was evinced by written notifications which as a matter of course were given to the insured by the broker upon payment of premiums. Global stands for the important proposition that "the agency created by the statute [N.J.S.A. 17:22-6.2(a)] is posited, not upon the delivery of a `policy', but of a `contract of insurance', a term of wider and more fluid meaning." Id. at 387. The pivotal inquiry is not so much whether a "policy" was physically delivered, but whether an actual contract of insurance existed. That element is lacking in the present matter. See Seabrook Farms, Inc. v. Commercial Ins. Co., 104 N.J. Super. 419 (Ch.Div. 1969) (agency does not operate retrospectively).
The scope of the statutory agency is limited to the collection of premiums on the insurer's behalf "which is due on such contract at the time of its issuance or delivery." N.J.S.A. 17:22-6.2a. Before the policy sought here could issue, approval by the Association was required. Renewal could not be simply assumed under the "Fair Plan" but qualification must exist. N.J.S.A. 17:37A-8(b)(3). Thus the defendant had never delivered a "contract of insurance" within the statute's meaning to LeCur as of the time of the fire on June 16, 1980.
If we accepted plaintiff's contention, we would have to read N.J.S.A. 17:22-6.2a and N.J.S.A. 17:37A-8 as creating an agency relationship between the broker selected by the insured and the Underwriting Association for practically all purposes. We discern no such intent from the statutes. Indeed, N.J.S.A. 17:37A-8(a) seems to emphasize the independent status of the insured's broker for purposes of the application process stating: "Such application may be made on behalf of an applicant by a broker or an agent authorized by him." We find no evidence in the statute that the Legislature intended to expand the Association's liability for the insured's broker's acts beyond the scope of the liability of a carrier competing in the open market. The statute was intended to provide a plan for insurance coverage *658 in high risk areas, not to cover the risk attendant upon negligence of a broker selected by a potential insured.
Reversed.