230 N.J. Super. 358 (1989)
553 A.2d 821
DONNA NEEDHAM, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
NEW JERSEY INSURANCE UNDERWRITING ASSOCIATION, DEFENDANT-APPELLANT AND CROSS-RESPONDENT, AND JAMES REYES, INDIVIDUALLY AND T/A REGENCY INSURANCE AGENCY, AND SECURITY PACIFIC INSURANCE PREMIUM FINANCING, INC., DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Submitted December 13, 1988.
Decided January 30, 1989.
*360 Before Judges MICHELS, LONG and MUIR, Jr.
Riley & DiCamillo, for appellant and cross-respondent New Jersey Insurance Underwriting Association (Thomas A. Shovlin, of counsel and on the brief).
*361 Muller and Kancher, for respondent and cross-appellant Donna Needham (Mark S. Kancher, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Defendant New Jersey Insurance Underwriting Association (Association) appeals from a judgment of the Law Division that awarded plaintiff Donna Needham damages in the amount of $38,594.57 in this fire insurance case. Plaintiff cross-appeals.
The facts giving rise to this action may be summarized as follows: In November 1985, plaintiff, who resided with her husband Thomas Needham at 3065 South Atlanta Road in Camden, New Jersey, purchased a single family home located at 801 Crown Point Road in Westville, New Jersey, with the intention of converting it into a rental duplex. Plaintiff asked her husband, who was manager of her restaurant-lounge, to obtain fire insurance for the property. She gave him permission to sign her name to any necessary forms.
On November 6, 1985, Mr. Needham contacted defendant James Reyes (Reyes), an insurance broker doing business under the name Regency Insurance Company. Mr. Needham had obtained insurance coverage for plaintiff's restaurant-lounge through Reyes. Mr. Needham went to Reyes' office on November 7, 1985, to sign the insurance forms. The paperwork was not completed when he arrived, however, so he signed his wife's name to a blank insurance application and provided Reyes with the information necessary to complete the application. Mr. Needham also asked Reyes to arrange financing for a portion of the insurance premium. To this end, Reyes filled out a financing agreement form that had been supplied by defendant Security Pacific Insurance Premium Financing, Inc. (Security Pacific). Mr. Needham signed his wife's name to the form and gave Reyes a check for $135.00 as a deposit for the insurance. At this time Reyes signed a Security Pacific draft in the *362 amount of $229.00. This amount was the total required premium on the fire insurance policy.
On November 15, 1985, the Association received the application for insurance, a copy of the Security Pacific financing agreement and the Security Pacific draft. Mr. Cassels, Association's claims manager, testified that the application indicated that the insured property was located at 801 Crown Point Road in Westville, New Jersey. The mailing address for plaintiff-insured was listed as 3065 South Atlantic Road, Camden, New Jersey. Plaintiff's correct address, however, is 3065 South Atlanta Road, Camden, New Jersey. The Security Pacific draft was accepted as full payment of the premium and the Association issued a fire insurance policy covering plaintiff's property on November 26, 1985. Plaintiff received the policy through the mail in spite of the fact that it bore an incorrect address.
The Security Pacific draft was deposited into the Association's premium account. It made its way through the banking system until it was returned to Security Pacific for approval. The draft was rejected when Security Pacific's business manager was unable to match the draft to a corresponding financing agreement which normally would have been provided by the broker. The draft department at Security Pacific stamped "DO NOT PRESENT AGAIN" and "RETURN FOR ENDORSEMENT" on the draft and returned it to the bank. Once the Association received the dishonored draft it implemented an "account cancellation". This procedure results in a notice of cancellation being mailed to both the insured party and the broker.
Esther White, the Association employee responsible for reviewing notices of cancellation, testified as to the standard procedure used in preparing and mailing notices of cancellation. A notice of cancellation is prepared on a multicopy form. The name and address of the insured party is on the top of the form and the name and address of the broker is on the bottom of the form. When a notice of cancellation is sent to an insured party, *363 a copy of that notice is also sent to the broker. Ms. White further testified that on December 11, 1985, she personally reviewed a notice of cancellation that was addressed to plaintiff at 3065 South Atlantic Road. She made certain that the address and policy amount corresponded to the information provided on the insurance application and she signed the notice. She sorted the copies and placed them in windowed envelopes with the addresses of plaintiff and Reyes showing through the windows of the respective envelopes. She put stamps on the certificates of mailing and handed the certificates and the envelopes containing the notices to the mail clerk who was responsible for carrying the certificates and envelopes across the street to the post office. The mail clerk returned a short time later and gave Ms. White the postmarked certificates of mailing. She attached these certificates to the office copy of the notice of cancellation and made a notation of the time on the office copy.
On April 24, 1986, a fire caused extensive damage to plaintiff's newly renovated building. At trial, plaintiff and her husband both testified that they assumed the building was insured because they had not received a notice of cancellation. Plaintiff acknowledged, however, that she received a computer generated notice of expiration approximately five months after the fire.
Plaintiff instituted this action against the Association, Security Pacific and Reyes, seeking to recover damages sustained as a result of the fire. She charged that (1) the Association breached its obligation to pay the loss under its fire insurance policy; (2) Security Pacific breached its obligation under an insurance premium financing agreement to pay the insurance premiums on the insurance policy, and (3) Reyes failed to keep and maintain in force fire insurance on her property. Prior to trial, a default judgment was entered against Reyes.
The trial court bifurcated the trial on the issues of liability and damages. At the conclusion of plaintiff's liability case, the *364 trial court granted the Association's motion for involuntary dismissal of those claims of plaintiff that sounded in negligence either directly against the Association or vicariously for Reyes' negligence. At the same time, the trial court granted Security Pacific's motion for involuntary dismissal of all claims and cross-claims against it. At the conclusion of the proofs, the Association moved for a judgment in its favor on the grounds that (1) it had proven that it had a right to cancel the insurance policy and (2) it had conclusively proven that it mailed the notice of cancellation thereby cancelling the policy. The trial court held as a matter of law that the Association had a right to cancel the policy and informed counsel that it would instruct the jury accordingly. The trial court reserved decision, however, with respect to the Association's claim that it had conclusively proven mailing of the notice as a matter of law. This matter was submitted to the jury and the jury found that the Association had not mailed the notice of cancellation. The trial court denied the Association's motions for a judgment notwithstanding the verdict and for a new trial as to liability. Thereafter, following a bench trial, the trial court awarded plaintiff damages in the amount of $38,594.57. This appeal followed.
The Association seeks a reversal of the judgment and a new trial as to both liability and damages. It contends that (1) the trial court erred in denying its motion for a new trial because the jury verdict was against the weight of the evidence; (2) the trial court's instruction to the jury that it could infer non-mailing of the notice of cancellation from evidence of non-receipt of the notice constituted plain error; (3) plaintiff's counsel's opening remarks to the jury concerning Reyes' financial status were improper and prejudicial; (4) the trial court erred in admitting into evidence a computer printout of plaintiff's construction costs and (5) plaintiff failed to meet her burden of proving the actual cash value of the loss. Plaintiff, by way of cross-appeal, contends that the trial court erred in holding, as a matter of law, that the Association had the right to cancel the policy.

*365 I.
At the outset, we are convinced that the trial court properly held that the Association had a right to cancel the policy issued to plaintiff. The thrust of plaintiff's argument to the contrary is that Reyes was the agent of the Association for the purpose of transmitting the premium payments to the Association and, therefore, the Association was vicariously liable for Reyes' negligence in failing to properly arrange for the payment of premiums. We disagree.
The Association was created by statute and its membership consists of insurance companies writing property insurance policies in New Jersey. N.J.S.A. 17:37A-3; Millner v. N.J. Ins. Underwriting Ass'n, 193 N.J. Super. 653, 655 (App.Div. 1984); N.J. Ins. Underwriting Assoc. v. Clifford, 112 N.J. Super. 195, 198 (App.Div. 1970). It was created "to carry out a program of property insurance on behalf of applicants unable to procure such insurance by themselves by reason of environmental factors beyond their control." Clifford, supra, 112 N.J. Super. at 198. The remedial nature of the Association was made clear in Millner, wherein we explained:
The purpose of this legislation was to ensure that anyone with an insurable interest in real property in this State would be able to obtain adequate insurance coverage. N.J.S.A. 17:37A-1. The Legislature found that this concept of universal coverage was not possible in the open insurance market, particularly in urban areas. Ibid. Under the legislative plan, undesirable risks are fairly distributed among all insurance companies involved in this type of insurance. See N.J. Ins. Underwriting Assoc. v. Clifford, 112 N.J. Super. 195 (App.Div. 1970). [193 N.J. Super. at 655].
To receive insurance from the Association, an applicant must demonstrate that (1) he has failed to procure essential property insurance in the open market, N.J.S.A. 17:37A-8a(1); (2) the property is insurable, N.J.S.A. 17:37A-8a(2), and (3) there are no outstanding premiums for other insurance on the property, N.J.S.A. 17:37A-8a(3). Additionally, the premium must be paid in full before the Association is permitted to issue an insurance policy under this statute. N.J.S.A. 17:37A-8b(3).
*366 The scope of the statutory agency relationship between the Association and a broker, such as Reyes, is set forth in N.J.S.A. 17:22-6.2a, which provides:
Any insurer which delivers in this State to any insurance broker a contract of insurance (other than a contract of life insurance, or life, accident or health insurance) pursuant to the application or request of such broker, acting for an insured other than himself, shall be deemed to have authorized such broker to receive on its behalf payment of any premium which is due on such contract at the time of its issuance or delivery or payment of any installment of such premium or any additional premium which becomes due or payable thereafter on such contract, provided such payment is received by such broker within 90 days after the due date of such premium or installment thereof or after the date of delivery of statement by the insurer of such additional premium. [Emphasis added].
The applicability of N.J.S.A. 17:22-6.2a to the Association was discussed in Millner. There, plaintiff had obtained a fire insurance policy issued by the Association which was effective from June 7, 1979, to June 7, 1980. After receiving a notice of expiration, plaintiff returned to the insurance broker who had assisted him in obtaining the policy. Plaintiff gave the broker a check for the renewal premium on May 12, 1980. The Association, however, did not receive the necessary documents and premium from the broker until June 18, 1980, after the policy had expired and after a fire had occurred. Millner, supra, 193 N.J. Super. at 654. The issue in Millner was whether N.J.S.A. 17:22-6.2a imposed liability upon the Association for the negligence of the broker. In concluding that it did not, we noted that the statute does not "creat[e] an agency relationship between the broker selected by the insured and the Underwriting Association for practically all purposes." Id. at 657. Instead, we stated that "[t]he scope of the statutory agency is limited to the collection of premiums on the insurer's behalf `which is due on such contract at the time of its issuance or delivery.'" Id. (citing N.J.S.A. 17:22-6.2a). Additionally, we stated that N.J.S.A. 17:37A-1 et seq., "was intended to provide a plan for insurance coverage in high risk areas, not to cover the risk attendant upon negligence of a broker selected by a *367 potential insured." Id. at 657-658. We held, therefore, that the Association was not liable for a broker's negligence.
Here, Reyes collected a premium down payment from plaintiff's husband and forwarded to the Association a Security Pacific draft for the full amount of the premium as well as an insurance application and a copy of the premium financing agreement. In reliance on the Security Pacific draft, the Association determined that the prepayment requirement of N.J.S.A. 17:37A-8b(3) had been satisfied and issued the insurance policy. Logically, the Association had the authority under the statute to cancel the policy when it became clear that the prepayment requirement had not been met, i.e., when the draft was returned dishonored from Security Pacific. Moreover, the plain terms of the Association's policy indicate that cancellation was appropriate. The policy, in pertinent part, reads:
(1) When you have not paid the premium, whether payable to us or to our agent or under any finance or credit plan, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect.
Nonetheless, plaintiff argues that the jury could have determined that Reyes was acting within the scope of his agency relationship with the Association when he failed to forward the financing agreement to Security Pacific. In such event, plaintiff reasons, the Association would be vicariously responsible for Reyes' negligence and would not be permitted to cancel the policy.
It is clear that the vicarious liability asserted by plaintiff far exceeds the limited agency relationship established under N.J.S.A. 17:22-6.2a. Under this statute, the scope of any potential agency relationship between Reyes and the Association extended only to Reyes' collection of the premium or premium down payment from plaintiff. The Association's vicarious liability for Reyes' premium collection responsibilities cannot be extended to include Reyes' negligence in failing to forward a copy of the insurance premium financing agreement to Security Pacific. To extend the scope of the Association's broker agency liability to include a broker's relationship with a premium financing *368 company would contravene the legislative intent in creating the Association.
Consequently, the trial court correctly held, as a matter of law, that the Association could not be held liable for Reyes' negligence. Therefore, the trial court properly instructed the jury that the Association had the right to cancel plaintiff's policy.

II.
The trial court also properly denied the Association's motion for a new trial on the ground that the jury's determination that it had not mailed the notice of cancellation was against the weight of the evidence. The standard of review of a trial court's disposition of a motion for a new trial based on the weight of the evidence is to determine whether "it clearly appears that there was a miscarriage of justice under the law." R. 2:10-1. See Carrino v. Novotny, 78 N.J. 355, 360-361 (1979); State v. Sims, 65 N.J. 359, 373 (1974); Dolson v. Anastasia, 55 N.J. 2, 8-9 (1969). In reviewing a trial court's ruling on such a motion, we must weigh heavily the trial court's "views of credibility of witnesses, their demeanor, and [its] general `feel of the case.'" Sims, supra, 65 N.J. at 373. However, in Dolson v. Anastasia, the Supreme Court made it clear that our review of the trial court's disposition of the motion is essentially the same as the standard controlling the trial court. Dolson, supra, 55 N.J. at 6-7. Moreover, we are not limited to a determination as to whether or not the trial court abused its discretion, but rather, we must make our own determination as to whether or not there was a miscarriage of justice, deferring to the trial court only with respect to those intangible aspects of the case not transmitted by the written record.
The cancellation provisions of the Association's insurance policy, in pertinent part, provide:
a. You may cancel this policy at any time by returning it to us or by notifying us in writing of the date cancellation is to take effect.

*369 b. We may cancel this policy only for the reasons stated in this condition by notifying you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing shall be sufficient proof of notice.

(1) When you have not paid the premium, whether payable to us or to our agent or under any finance or credit plan, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect. [(Emphasis added)].
Clearly, the Association could have cancelled plaintiff's insurance policy by mailing a notice of cancellation to plaintiff at the address shown in the declarations. Cancellation would have been effective whether or not plaintiff actually received the notice of cancellation because mailing of the notice, not receipt, was the determinative factor. Weathers v. Hartford Insurance Group, 77 N.J. 228, 234 (1978); State v. Hochman, 188 N.J. Super. 382, 388 (App.Div. 1982). See also 6A Appleman, Insurance Law and Practice (1972), § 4186 at 552; 45 C.J.S. Insurance, § 450, pp. 89-91.
Although proof of mailing may be sufficient proof of notice of the cancellation of the policy under the policy's cancellation provisions, nonetheless, such proof is not conclusive on the issue of mailing. Plaintiff may still offer proof, as she did here, that she never received the notice for "the purpose of refuting the hypothesis of mailing." Weathers, supra, 77 N.J. at 235; Hochman, supra, 188 N.J. Super. at 388. See Celino v. General Acc. Ins., 211 N.J. Super. 538, 542 (App.Div. 1986).
In Weathers, the Supreme Court discussed the adequacy of proof of mailing in the context of an automobile insurance policy. There, the Court reversed our ruling that the evidence of Hartford's cancellation procedure and certificate of mailing for its notice of cancellation had established, as a matter of law, that plaintiff's policy had been validly cancelled under an early version of N.J.S.A. 17:29C-10, which provided, in pertinent part, that "[p]roof of mailing of notice of cancellation ... shall be *370 sufficient proof of notice."[1]Weathers, supra, 77 N.J. at 232-233. The Court in Weathers stated:
Although the inference of non-mailing provided by evidence of non-receipt might in most cases be outweighed by the inferences of mailing which may be drawn from a certificate of mailing whose reliability has been established, we discern no cogent reason for depriving the trier of fact of such evidence by holding it inadmissible even for that limited purpose. While, as we have held above, defendant's proofs as to mailing are admissible, they are not conclusive of that issue and do not preclude the existence of a genuine issue of material fact in the face of a claim of non-receipt so as to entitle the insurer to judgment as a matter of law. See Sudduth v. Commonwealth County Mutual Ins. Co., 454 S.W.2d 196 (Tex.Sup.Ct. 1970); 9 Wigmore on Evidence (3d ed. 1940) § 2519; cf. Fitzpatrick v. Merchants and Manufacturers Fire Ins. Co., 122 N.J.L. 468 (E. & A. 1939). The contrary holding of Womack v. Fenton, 28 N.J. Super. 345 (App.Div. 1953), on this point is hereby overruled. Permitting the factfinder to consider the addressee-insured's denial of receipt of the notice of cancellation does not improperly add to the insurer's statutory burden of proving mailing by requiring it to prove actual receipt of the notice since such testimony is admissible only as the basis for an inference of its non-mailing. The insurer still need only prove constructive notice by adequately establishing that the notice of cancellation was mailed. [77 N.J. at 235-236].
Similarly, in 9 Wigmore, Evidence (Chadbourn rev.)(1981), § 2519 at 567, the applicable rule of law is explained as follows:
Whether the letter was mailed often becomes the issue under the substantive law; for example, in charging an indorser of a negotiable instrument with a notice of the notarial protest or in charging an insured with notice of a premium due; here the actual receipt of the letter becomes immaterial; the mailing suffices. But suppose that the addressee testifies in denial of the receipt? If this denial be believed, then is not the nonarrival of the letter some evidence that it was never mailed? The presumption above rests upon the supposed *371 uniform efficiency of the postal service in delivering letters duly stamped, addressed, and mailed into its custody; if therefore the efficiency is operating, does not the nonarrival of an alleged letter indicate that such a letter was never given into the postal custody? Add to this, that the testimony to mailing comes usually from the mouth of persons who are vitally self-interested in proving the fact of mailing, e.g., a bank cashier who as notary mails notices of protest of the bank's negotiable instruments, or the agent of an insurer seeking to avoid a liability under the policy? [(Emphasis in original)].
Here, the Association offered proofs to establish that the notice of cancellation was mailed to plaintiff. These proofs included a certificate of mailing of the notice of cancellation, a certified office copy of the notice of cancellation and testimony on standard office procedure with respect to the preparation and mailing of notices of cancellation. The Association, however, did not present testimony from the mail clerk who actually mailed the notice of cancellation. The employees who testified for the Association "did not indicate personal knowledge as to individualized review of the envelopes by a postal clerk before the postmark [was] affixed" to the certificate of mailing. Weathers, supra, 77 N.J. at 235. With respect to this type of testimony the Supreme Court in Weathers stated:
Evidence from personnel in defendant's organization charged with mailing notices and from postal employees as to their verification of contents of the mailed envelopes would have established a stronger case of mailing than what defendant adduced. [77 N.J. at 235].
See also Cwiklinski v. Burton, 217 N.J. Super. 506, 511 (App. Div. 1987) (where we held in a non-insurance case that under Weathers and Borgia v. Bd. of Review, 21 N.J. Super. 462 (App.Div. 1982), "testimony from one who actually mails the notices or letters is necessary to establish conclusively the fact of mailing.").
Plaintiff and her husband, on the other hand, testified that they never received a notice of cancellation. Mr. Needham further testified that he and his wife regularly received mail that was improperly addressed in the same manner that the notice of cancellation was improperly addressed. Thus, there existed a factual issue as to whether the Association had mailed the notice of cancellation to plaintiff.
*372 Moreover, the Association's claim that it is unfair to permit plaintiff to argue non-mailing based solely on a self-serving allegation of non-receipt is unpersuasive. Plaintiff's testimony as to non-receipt of the notice of cancellation was no more self-serving than the Association's testimony indicating mailing of that same notice. Both parties had an interest in the outcome of the litigation and the credibility of the testimony presented by both parties was an issue for the jury.
Additionally, the Supreme Court in Weathers clearly stated:
Although the inference of non-mailing provided by evidence of non-receipt might in most cases be outweighed by the inferences of mailing which may be drawn from a certificate of mailing whose reliability has been established, we discern no cogent reason for depriving the trier of fact of such evidence by holding it inadmissible even for that limited purpose. [77 N.J. at 235].
Finally, the issue of mailing did not go to the jury solely on plaintiff's allegation of non-receipt. Instead, the jury was permitted to consider the Association's proofs of mailing in the face of plaintiff's denial of receipt as well as the absence of testimony from the one who the Association claims actually mailed the notice of cancellation.
Thus, the issue of mailing of the notice of cancellation was properly submitted to the jury and the jury could have found from all of the proofs that the notice was not mailed. The verdict, therefore, was not "a miscarriage of justice under the law," and the trial court properly denied the Association's motion for a new trial.

III.
We are satisfied from our study of the entire charge that the trial court did not commit error, let alone plain error, in instructing the jury that it could infer non-mailing of the notice of cancellation from evidence of non-receipt of the notice of cancellation. In instructing the jury, the trial court had an obligation "to correctly state the applicable law in understandable language, and plainly spell out how the jury should apply the legal principles to the facts as it may find them...." *373 Navarro v. George Koch & Sons, Inc., 211 N.J. Super. 558, 570 (App.Div. 1986), certif. den. 107 N.J. 48 (1986) (quoting Jurman v. Samuel Braen, Inc., 47 N.J. 586, 591-592 (1966)). In the present case, the evidence of non-receipt of the notice of cancellation was properly submitted to the jury and the trial court correctly instructed the jury that it could consider this evidence "for the sole purpose of refuting the hypothesis of mailing." Such inference is clearly permissible under Weathers and Hochman.

IV.
Plaintiff established her loss within the standards for determining actual cash value set by our Supreme Court in Elberon Bathing Co. v. Ambassador Insurance Co., 77 N.J. 1 (1978). See also Miller v. N.J. Ins. Underwriting Ass'n, 188 N.J. Super. 175, 185-186 (App.Div. 1983), certif. den. 94 N.J. 508 (1983). With respect to the damage issue, we simply point out that the trial court erred in admitting into evidence a computer printout of plaintiff's renovation costs under the business record exception to the hearsay rule, Evid.R. 63(13), because the entries were not supplied to plaintiff or made in the ordinary course of business. See A.J. Tenwood A. v. Orange Sr. Cit. Housing, 200 N.J. Super. 515, 527-528 (App.Div. 1985), certif. den. 101 N.J. 325 (1985); Sas v. Strelecki, 110 N.J. Super. 14, 20 (App.Div. 1970); Monarch Federal Sav. & Loan Ass'n v. Genser, 156 N.J. Super. 107, 119 (Ch.Div. 1977). This error, however, was harmless in view of the fact that the damage award was based primarily, if not solely, on plaintiff's expert's testimony.

V.
Finally, we agree with the Association that plaintiff's counsel's opening remarks to the jury concerning Reyes' financial status served no legitimate purpose and should not have been made. Nonetheless, in the context of this case, we do not *374 find that they were so prejudicial as to require a reversal of the judgment. Moreover, whatever prejudice may have been created by such comments was minimized by the trial court's instruction to the jury, in its introductory remarks, that the statements of counsel were not evidence and by the trial court's caveat, in its final charge, that the verdict should not be affected by the fact that a default judgment was entered against Reyes. Any residual prejudice in the collective mind of the jury was "not of such moment as to threaten [the Association's] enjoyment of a fair trial." Amaru v. Stratton, 209 N.J. Super. 1, 16 (App.Div. 1985); See also Finderne Engine Co. v. Morgan Trucking Co., 98 N.J. Super. 421, 430 (App.Div. 1968).
Accordingly, the judgment under review is affirmed.
NOTES
[1] Subsequent to the Supreme Court's decision in Weathers, N.J.S.A. 17:29C-10, which pertains to cancellation or non-renewal of automobile insurance policies, was amended by L. 1980, c. 165, § 2, to provide:

No written notice of cancellation or of intention not to renew sent by an insurer to an insured in accordance with the provisions of an automobile insurance policy shall be effective unless a. (1) it is sent by certified mail or (2) at the time of the mailing of said notice, by regular mail, the insurer has obtained from the Post Office Department a date stamped proof of mailing showing the name and address of the insured and b. the insurer has retained a duplicate copy of the mailed notice which is certified to be a true copy.
This statute is not controlling in the present case because the subject policy is a fire insurance policy rather than an automobile insurance policy.