273 N.J. Super. 54 (1994)
640 A.2d 1200
HERMANN FORWARDING CO. AND HERMANN LEASING CO., PLAINTIFFS-RESPONDENTS,
v.
PAPPAS INSURANCE CO., WILLIAM PAPPAS AND THOMAS PAPPAS, DEFENDANTS, AND A.I. CREDIT CORPORATION (REFERRED TO IN THE COMPLAINT AS A.I.C.C.O.), DEFENDANT-RESPONDENT, AND LIBERTY MUTUAL INSURANCE COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 22, 1994.
Decided May 9, 1994.
*56 Before Judges MICHELS and SKILLMAN.
Berlin, Kaplan, Dembling & Burke, attorneys for appellant Liberty Mutual Insurance Company (Marc L. Dembling, of counsel and on the brief).
Shamy, Shipers & Lonski, attorneys for respondents Hermann Forwarding Co. and Hermann Leasing Co. (David P. Lonski, of counsel and on the brief).
*57 Saul, Ewing, Remick & Saul, attorneys for respondent A.I. Credit Corporation (Edward S. Wardell, attorney; Ellen C.K. Giangiordano, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Defendant Liberty Mutual Insurance Company (Liberty Mutual) appeals from summary judgments of the Law Division that awarded plaintiffs Hermann Forwarding Co. and Hermann Leasing Co. damages in the amount of $67,611.25 and A.I. Credit Corporation (Credit Corporation) (referred to as A.I.C.C.O. in the complaint) damages in the amount of $37,840.26 for the overpayment of premiums to defendants Pappas Insurance Co., William Pappas and Thomas Pappas (collectively referred to as Pappas).
Liberty Mutual, in its capacity as a servicing carrier for the New Jersey Commercial Automobile Insurance Plan (Plan), received an application from the Plan for commercial truck insurance coverage for plaintiffs. Pappas had submitted the application to the Plan on behalf of plaintiffs. On March 1, 1992, Liberty Mutual issued its Truckers Liability Insurance Policy to plaintiffs for the period from March 1, 1992 to March 1, 1993. The total policy advance premium was $556,128, which included a New Jersey Property-Liability Insurance Guarantee Association surcharge of $1,835. Plaintiffs paid a $166,838 down payment on the premium, and plaintiffs financed the balance of $389,290 through Credit Corporation. The monthly payments were $57,247, with the first payment due on April 1, 1992 and the last payment due on October 1, 1992. The finance agreement, signed by plaintiffs and their broker, Pappas, in part, provided:
1. Payments. In consideration of the premium payment to be made by you to the above insurance company(ies), I promise to pay you as stated above in the "Payment Schedule." If I do not make a payment on time, I will pay a late charge as stated above.
The word "you" in the "Payments" provision referred to Credit Corporation and the word "I" referred to plaintiffs.
*58 Plaintiffs remitted premium payments directly to Pappas. The checks were written to the order of Pappas and deposited by Pappas. The total amount of the checks issued between March 1, 1992 and May 1, 1992 was $174,494.[1] Additionally, Credit Corporation paid the financed amount of $389,290 to Liberty Mutual on March 3, 1992.
On May 20, 1992, the policy was canceled for non-payment of premium, resulting in a premium credit of $460,689 and a surcharge credit of $1,520. Liberty Mutual furnished plaintiffs with a statement of account which indicated that the total policy premium was $556,128 with a surcharge of $1,835.[2] The statement also indicated that Liberty Mutual had received $126,360 towards the premium. Consequently, the statement showed a credit balance of $30,606 due to plaintiffs which was paid by Liberty Mutual to Credit Corporation.
According to plaintiffs, the statement indicating a $126,360 payment on account was not accurate and did not include all payments actually made to Pappas on this policy. Plaintiffs claimed that they had paid Pappas a total amount of $174,494, but that Pappas, in turn, only paid $126,360 to Liberty Mutual, thus leaving an unaccounted sum of $48,134.[3] Plaintiffs claim, therefore, *59 that they had overpaid Pappas a total of $78,740 on the policy. Additionally, Pappas made only one credit installment payment of $57,252 to Credit Corporation prior to the cancellation. Following the cancellation, Pappas remitted $41,035.74 to Credit Corporation in June 1992, and $34,000 and $30,606 in July of 1992. These payments left a balance due to Credit Corporation of $37,840.26. In sum, plaintiffs claimed that they had overpaid Pappas by $78,740 and Credit Corporation claimed that they had overpaid Pappas by $38,840.
Plaintiffs instituted this action against Liberty Mutual, Credit Corporation and Pappas to recover the overpayment of premiums made to Pappas. Credit Corporation denied liability and counterclaimed against plaintiffs, contending that plaintiffs were liable for the unpaid balance due under the premium finance agreement. Credit Corporation also cross-claimed against Pappas and Liberty Mutual for contribution and indemnification for all sums which it may be compelled to pay plaintiffs. Liberty Mutual denied that it was under any liability to plaintiffs and Credit Corporation and cross-claimed against Credit Corporation and Pappas for contribution and indemnification for all sums it may be compelled to pay plaintiffs. Pappas did not file an answer to either the complaint or cross-claims, and apparently the Pappas Insurance Company declared bankruptcy.
Shortly after issue was joined, but before pretrial discovery had been completed, plaintiffs moved for summary judgment against Liberty Mutual. They sought to recover from Liberty Mutual the unearned premiums that were paid to Pappas on the ground that under N.J.S.A. 17:22-6.2a Pappas was acting as Liberty Mutual's agent when it received the premiums. Credit Corporation also moved for summary judgment and sought to recover the balance due under the premium finance agreement either from plaintiffs or from Liberty Mutual, as the principal of Pappas. The trial court held that under N.J.S.A. 17:22-6.2a Pappas was the agent for Liberty Mutual when it accepted premium payments from plaintiff and Credit Corporation because an insurance contract *60 existed between plaintiffs and Liberty Mutual. Therefore, the trial court found that Liberty Mutual was liable for the repayment of all unearned premiums. Summary judgment was entered against Liberty Mutual and in favor of plaintiffs in the amount of $67,611.25 and in favor of Credit Corporation in the amount of $37,840.26. Liberty Mutual appealed both judgments and we consolidated the appeals.
Liberty Mutual seeks a reversal of the summary judgment, contending generally that the trial court erred because pretrial discovery had not yet been completed, there were genuine issues of material fact and the trial court wrongly construed N.J.S.A. 17:22-6.2a to eliminate the policy delivery requirement. We agree and reverse.
R. 4:46-1 permits a party to move for summary judgment at anytime. However, summary judgment is a stringent remedy and should not be granted unless the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to judgment as a matter of law. The moving party's burden on such a motion is to exclude all reasonable doubt as to the existence of any genuine issue of material fact. All inferences of doubt are drawn against the moving party and in favor of the opponent of the motion. The papers supporting the motion are closely scrutinized and the opposing papers indulgently treated. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74-75, 110 A.2d 24 (1954); see also Brenner and Co. v. Perl, 72 N.J. Super. 160, 166, 178 A.2d 19 (App.Div. 1962). If there is the slightest doubt as to the existence of a material issue of fact, the motion should be denied. Garley v. Waddington, 177 N.J. Super. 173, 179, 425 A.2d 1084 (App.Div. 1981); Linn v. Rand, 140 N.J. Super. 212, 216, 356 A.2d 15 (App.Div. 1976).
Furthermore, summary judgment should not be granted where the adjudication of such a motion would constitute what is in effect a trial by pleadings and affidavits involving issues of fact. *61 Shanley & Fisher, P.C. v. Sisselman, 215 N.J. Super. 200, 211-212, 521 A.2d 872 (App.Div. 1987). Although summary judgment serves the valid purpose in our judicial system of protecting against groundless claims and frivolous defenses, it is not a substitute for a full plenary trial. United Advertising Corp. v. Metuchen, 35 N.J. 193, 195-196, 172 A.2d 429 (1961). In short, summary judgment should be denied unless the right thereto appears so clearly as to leave no room for controversy. Shanley & Fisher, P.C. v. Sisselman, supra, 215 N.J. Super. at 212, 521 A.2d 872. Considered in this light, the trial court erred in granting plaintiffs and Credit Corporation summary judgment.
The trial court entered judgment against Liberty Mutual on the ground that Pappas, although not a general agent of Liberty Mutual, was an authorized agent of Liberty Mutual for the purpose of accepting premium payments by virtue of N.J.S.A. 17:22-6.2a. Consequently, the trial court held that Liberty Mutual was liable to plaintiffs and Credit Corporation for the failure of Pappas to return the unearned premiums. N.J.S.A. 17:22-6.2a provides:
Any insurer which delivers in this State to any insurance broker a contract of insurance (other than a contract of life insurance, or life, accident or health insurance) pursuant to the application or request of such broker, acting for an insured other than himself, shall be deemed to have authorized such broker to receive on its behalf payment of any premium which is due on such contract at the time of its issuance or delivery or payment of any installment of such premium or any additional premium which becomes due or payable thereafter on such contract, provided such payment is received by such broker within 90 days after the due date of such premium or installment thereof or after the date of delivery of statement by the insurer of such additional premium.
The purpose of N.J.S.A. 17:22-6.2a is to "protect the insurance buying public from the misappropriation, conversion, or other misconduct of an insurance broker in those instances where an insurer uses the broker to effect the delivery of the policy of insurance and to collect the premiums due for it." Kubeck v. Concord Ins. Co., 103 N.J. Super. 525, 533, 248 A.2d 131 (Ch.Div. 1968), aff'd o.b., 107 N.J. Super. 510, 259 A.2d 473 (App.Div. 1969). See also Millner v. N.J. Ins. Underwriting Ass'n, 193 N.J. Super. 653, 656, 475 A.2d 653 (App.Div. 1984); Weathers v. Hartford Ins. *62 Group, 153 N.J. Super. 563, 569, 380 A.2d 724 (App.Div. 1977), rev'd on other grounds, 77 N.J. 228, 236, 390 A.2d 548 (1978); Global American Ins. Managers v. Perera Co., Inc., 137 N.J. Super. 377, 386, 349 A.2d 108 (Ch.Div. 1975), aff'd o.b., 144 N.J. Super. 24, 364 A.2d 546 (App.Div. 1976); Sheeran v. Sitren, 168 N.J. Super. 402, 408, 403 A.2d 53 (Law Div. 1979). N.J.S.A. 17:22-6.2a is simply a codification of our existing common law that where a broker has been entrusted to deliver a policy, the insured may justifiably believe that his brokerage is authorized to receive payment of premiums therefore on the insurer's behalf. This rule is grounded in general principles of apparent authority. Global American Ins. Managers v. Perera Co., Inc., supra, 137 N.J. Super. at 385-86, 349 A.2d 108; Mt. Vernon Fire Ins. Co. v. Gillian, 95 N.J. Super. 279, 283, 230 A.2d 892 (App.Div. 1967).
The critical element here is the statutory requirement of delivery of the insurance policy by the insurer to the broker. See Millner v. N.J. Ins. Underwriting Ass'n, supra, 193 N.J. Super. at 656, 475 A.2d 653; Global American Ins. Managers v. Perera Co., Inc., supra, 137 N.J. Super. at 387, 349 A.2d 108. Liberty Mutual contends that it did not "deliver" the Truckers Liability Insurance Policy to Pappas within the meaning of the statute. To the contrary, it argues, based on the affidavit of James Linn, the manager of Business Residual Market Accounts Underwriting for Liberty Mutual's Mid-Atlantic Division, that the Trucker's policy was mailed directly to plaintiffs, not Pappas. Linn acknowledged, however, that as a matter of courtesy a copy of the policy also was sent to Pappas. Additionally, Linn stated that Liberty Mutual's business practice is to "mail all bills directly to its insureds requesting that payment be made directly to Liberty Mutual," and that he had "no reason to believe that there was any deviation from [that] business practice."
Based upon Linn's affidavit, which stands unchallenged, N.J.S.A. 17:22-6.2a would not apply to impose liability upon Liberty Mutual for the failure of Pappas to return the unearned premiums since Liberty Mutual could not be said to have "delivered" the policy to Pappas. At the very least, Linn's affidavit *63 created a genuine issue of material fact as to whether Liberty Mutual "delivered" the Truckers Liability Insurance Policy to Pappas under N.J.S.A. 17:22-6.2a. The existence of such a factual issue precludes the granting of summary judgment in favor of plaintiffs and Credit Corporation.
Additionally, although the trial court did not decide the issue, plaintiffs also contend that Liberty Mutual is liable for the overpayment of premiums made to Pappas under common law principles of apparent authority. Thus, even a determination that N.J.S.A. 17:22-6.2a did not apply to impose liability upon Liberty Mutual for Pappas' failure to return the unearned premiums would not end the inquiry. Plaintiffs and Credit Corporation can still pursue Liberty Mutual for Pappas' failure to return the unearned premiums due to them under common law principles of apparent authority. The full reach of the general principles of the apparent authority recognized in New Jersey is broader than the limits strictly defined by the statutory language of N.J.S.A. 17:22-6.2a. See Global American Ins. Managers v. Perera Co., Inc., supra, 137 N.J. Super. at 385-86, 349 A.2d 108. See also Spilka v. South America Managers Inc., 54 N.J. 452, 463, 255 A.2d 755 (1969); Mt. Vernon Fire Ins. Co. v. Gillian, supra, 95 N.J. Super. at 282-83, 230 A.2d 892; Mesce v. Automobile Ass'n of New Jersey, 8 N.J. Super. 130, 135, 73 A.2d 586 (App.Div. 1950); 14 Appleman, Insurance Law & Practice § 7981 at 366-67 (1985).
The resolution of the issue of apparent authority in the context of this case is extremely fact-sensitive. We are not satisfied from our review of this record that the issue of apparent authority was fully developed before the trial court. Moreover, to the extent that the issue may have been raised below and is now before this court, we cannot conclude on this record that plaintiffs and Credit Corporation have excluded all reasonable doubt as to the existence of genuine material factual issues concerning the apparent authority of Pappas to collect premiums paid on the Truckers Liability Insurance Policy on behalf of Liberty Mutual. Stated simply, a fuller development of the facts on this issue is necessary, precluding summary judgment at this juncture.
*64 Beyond this, we are satisfied that this matter as a whole was not ripe for determination by summary judgment. As we have observed, the critical factual issues were not fully developed before the trial court. Pretrial discovery had not been completed. According to a letter submitted to the motions clerk by Liberty Mutual in opposition to the summary judgment motions, depositions had not been taken and neither Credit Corporation nor the Pappas defendants had answered interrogatories. Thus, the summary judgment motions were premature and the trial court should not have entertained them. The motions should have been either continued, dismissed or denied in order to afford Liberty Mutual a reasonable opportunity to complete pretrial discovery. See Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 193, 536 A.2d 237 (1988); Bilotti v. Accurate Forming Corp., 39 N.J. 184, 206, 188 A.2d 24 (1963); Auster v. Kinoian, 153 N.J. Super. 52, 56, 378 A.2d 1171 (App.Div. 1977); see also Pressler, Current N.J. Court Rules, comment on R. 4:46-5.
Accordingly, the summary judgments under review are reversed and the matter is remanded to the trial court for further proceedings.
NOTES
[1] It appears that the record contains a discrepancy regarding the amount paid by plaintiffs to Pappas. Although defendants' briefs and plaintiffs' brief in support of the motion for summary judgment indicate that the amount paid was either $174,484 or $174,494, the sum of the checks submitted in the record and plaintiffs' complaint indicate that the amount paid was $177,445.60.
[2] Again, the record contains a discrepancy regarding the total due on the policy. Liberty Mutual's policy indicates that the total policy premium was $556,128 which included the New Jersey Property-Liability Insurance Guaranty Association surcharge of $1,835. However, Liberty Mutual's Statement of Account indicates that the surcharge was not included in premium amount but was an additional charge, thus making the total due on the policy $557,963.
[3] Plaintiffs' brief in support of the motion for summary judgment refers to this amount. Plaintiffs' complaint, however, indicates the amount paid as $177,445, which accords with the sum of the checks submitted in the appendix, and which would leave an unaccounted sum of $51,085.