188 N.J. Super. 382 (1982)
457 A.2d 1156
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
PAUL HOCHMAN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 14, 1982.
Decided November 24, 1982.
*383 Before Judges MICHELS, PRESSLER and TRAUTWEIN.
Samuel L. Marguiles argued the cause for appellant.
Miriam K. Brody, Assistant Essex County Prosecutor, argued the cause for respondent (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; James R. Zazzali, former Attorney General, and George L. Schneider, Essex County Prosecutor, of counsel; Hilary L. Brunell, Assistant Essex County Prosecutor, on the letter brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Defendant Paul Hochman was convicted in the Municipal Court of the Town of Montclair of operating his motor vehicle in violation of the compulsory insurance provisions of N.J.S.A. 39:6B-2. His driver's license was suspended for six months, and he was fined $50. Defendant appealed to the Law Division where, after a trial de novo on the record below, he was again found guilty and the same sentence imposed. The judgment was stayed pending the outcome of an appeal to this court.
The trial in this case was a procedural anomaly. The municipal court judge permitted the case to be submitted on the exculpatory statement of facts recited in defendant's trial brief, which facts defendant allegedly was prepared to prove. The *384 State concurred in the procedure, apparently because it was unable to refute the statement of facts. Cf. State v. Wolden, 153 N.J. Super. 57, 58 (App.Div. 1977). According to this stipulation, on July 15, 1980, while operating a motor vehicle owned by him, defendant was stopped by a Montclair police officer because the New Jersey inspection sticker on that vehicle had expired. The officer asked defendant to produce his license, vehicle registration and insurance identification card. Defendant produced the first two documents but was unable to locate his insurance card. The officer then inquired through the Montclair Police Department whether the vehicle was insured and was informed that the insurance on the vehicle had been cancelled. The officer thereupon issued summonses to defendant charging him with (1) failing to have a motor vehicle inspected, in violation of N.J.S.A. 39:8-9, and (2) operating a vehicle without an insurance identification card in his possession, in violation of N.J.S.A. 39:3-29. This latter summons was subsequently amended to charge defendant with operating an uninsured vehicle in violation of N.J.S.A. 39:6B-2.
The stipulation further recites that because of the long hours that he worked, defendant asked his wife to look after household matters, including insurance matters, and gave her several thousand dollars each month to pay for them. Defendant's wife arranged through First City Insurance (First City), an insurance broker, to have Allstate Insurance Company (Allstate) insure the vehicle involved. First City arranged to finance the premiums through Lee Finance Services (Lee Finance), and defendant's wife tendered $168 to First City and agreed to pay the balance to Lee Finance in monthly installments of $48.10. First City, as an agent of Allstate, issued an insurance identification card to defendant's wife for the vehicle. The card stated that the insurance on the vehicle was to remain in effect for the period from August 28, 1979 to August 28, 1980.
Thereafter, defendant's wife made payments to Lee Finance, the last payment being made on October 13, 1979. On October 15, 1979, Allstate informed defendant's wife by letter that there *385 was due and owing a premium of $331 and that payment should be made immediately. Defendant's wife notified First City that she had received the letter from Allstate and reminded First City that the insurance premiums were being financed through Lee Finance pursuant to the financing agreement arranged by it and therefore she should not have to pay the balance of the account. First City informed defendant's wife that it would investigate the problem and contact her.
In December 1979 defendant and his wife moved from their residence at 314 Park Street, Montclair, and left a forwarding address. In January 1980, because defendant's wife had not heard from First City, she again contacted First City and informed it that she had received no further correspondence from Allstate. She inquired into the status of the insurance on the vehicle. First City informed defendant's wife that they were still investigating the problem and would contact her when it had been resolved. It was further stipulated that defendant was never told by his wife of the financing agreement or of the difficulties that she had encountered with the insurance.
Sometime in April or early May 1980 defendant was transferred from the New York office to the Newark, New Jersey, office of his employer and needed to use the vehicle to get to work. According to the stipulated facts, defendant's wife told defendant that the vehicle could be driven. Defendant, relying on what his wife had told him and believing that the vehicle was insured, drove the vehicle until July 15, 1980, when he was charged with violating the compulsory insurance provisions of N.J.S.A. 39:6B-2.
It was further stipulated that in the preparation of the defense of this matter, defendant learned that sometime in October or November 1979 Lee Finance liquidated without informing its clients, including defendant's wife. Moreover, although Allstate claimed that it sent a notice of cancellation of the policy to defendant's wife, she never received it. The insurance identification card prepared and issued by First City *386 indicated defendant's address to be 313 Park Street rather than 314 Park Street, where he had lived before he moved. Ostensibly as a result of this error, the State agreed with defendant and stipulated that if Allstate mailed the cancellation notice it mailed it to the wrong address. It was also stipulated that the State received notice of cancellation of the policy. Finally, the stipulation recited that First City never informed defendant's wife, despite her inquiry, that Allstate had cancelled the insurance policy, or that Lee Finance had liquidated, or that she could reinstate the policy by paying the balance due on the annual premium.
The trial judge, based solely on the stipulated facts, found that the liability insurance policy on the vehicle had been cancelled and convicted defendant of violating the compulsory insurance provisions of N.J.S.A. 39:6B-2. This appeal followed.
Defendant seeks a reversal of his conviction, contending that the State failed to prove beyond a reasonable doubt that he did not have a valid policy of liability insurance covering his vehicle at the time he was charged with the offense. The essential thrust of his argument is that the State's proofs failed to show that the Allstate insurance policy was lawfully cancelled. We agree and reverse the judgment of conviction.
N.J.S.A. 39:6B-2 (L. 1972, c. 197, § 2), which became effective on January 1, 1973, provides:
Any owner, or registrant of a motor vehicle registered or principally garaged in this State who operates or causes to be operated a motor vehicle upon any public road or highway in this State without motor vehicle liability insurance coverage required by this act, and any operator who operates or causes a motor vehicle to be operated and who knows or should know from the attendant circumstances that the motor vehicle is without motor vehicle liability insurance coverage required by this act shall be subject, for the first offense, to a fine of not less than $50.00 nor more than $200.00 or imprisonment for a term of not less than 30 days nor more than 3 months or both, in the discretion of the municipal judge, and shall forthwith forfeit his right to operate a motor vehicle over the highways of this State for a period of 6 months from the date of conviction. Upon subsequent conviction, he shall be imprisoned for a term of 3 months and shall forfeit his right to operate a motor vehicle for a period of 2 years from the date of his conviction, and, after the expiration of said period, he may make application to the Director of the Division of Motor Vehicles for a license to *387 operate a motor vehicle, which application may be granted at the discretion of the director. The director's discretion shall be based upon an assessment of the likelihood that the individual will operate or cause a motor vehicle to be operated in the future without the insurance coverage required by this act. A complaint for violation of this act may be made to a municipal court at any time within 6 months after the date of the alleged offense.
This statute creates two classes of persons who are subject to its provisions: owners/registrants of motor vehicles and operators of motor vehicles. The statute imposes strict liability upon an owner/registrant for operating or causing to be operated his motor vehicle without the liability insurance coverage required by N.J.S.A. 39:6B-1. An operator, however, is liable only if he knows or should know from the attendant circumstances that the motor vehicle he is operating is not covered by the required liability insurance policy. Here, we are concerned only with the owner of the motor vehicle. Thus, in order to convict defendant of operating his motor vehicle in violation of the compulsory insurance provisions of N.J.S.A. 39:6B-2, the State did not have to show a culpable mental state, i.e., that defendant knew his vehicle was uninsured. The State simply had the burden of proving beyond a reasonable doubt that (1) defendant owned the vehicle, (2) the vehicle was registered in New Jersey, (3) defendant operated the vehicle or caused it to be operated upon any public road or highway in this State, and (4) the vehicle was without liability insurance coverage required by N.J.S.A. 39:6B-1.
The first three elements of the offenses were proven beyond a reasonable doubt. The facts stipulated establish that defendant owned the vehicle, that the vehicle was registered in New Jersey and that defendant operated the vehicle on a public road or highway in this State. The pivotal issue is whether the State proved beyond a reasonable doubt the fourth element of the offense  that the vehicle was uninsured. The answer to this question turns, of course, on whether the liability insurance policy, which defendant's wife had obtained from Allstate, had been lawfully and effectively cancelled when he was charged with the offense.
*388 A notice of cancellation of a policy of automobile liability insurance is effective in this State only if it is based on one or more statutorily enumerated reasons, including the non-payment of premiums. N.J.S.A. 17:29C-7(A)(a). Moreover, prior to March 10, 1981, where, as here, the cancellation was for nonpayment of premiums, the notice of cancellation must have been mailed or delivered by the insurance carrier (here Allstate) to the insured (here either defendant or his wife) at least ten days prior to the effective date of cancellation and must have been accompanied by a statement of the reason given for such cancellation. N.J.S.A. 17:29C-8.[1] Proof of mailing of the notice of cancellation to the named insured at the address shown in the policy was deemed sufficient proof of notice. N.J.S.A. 17:29C-10.[2] Under this latter statute, cancellation was effective whether or not the insured actually received notice of cancellation because proof of mailing, not proof of receipt, was the determinative factor. See Weathers v. Hartford Ins. Group, 77 N.J. 228, 234 (1978). Proof of mailing of the notice, however, is not conclusive on the issue. The insured may still offer proof that he never received the notice "for the purpose of refuting the hypothesis of mailing." Id. at 235. Thus, in Weathers, the Supreme Court held:

*389 Although the inference of non-mailing provided by evidence of non-receipt might in most cases be outweighed by the inferences of mailing which may be drawn from a certificate of mailing whose reliability has been established, we discern no cogent reason for depriving the trier of fact of such evidence by holding it inadmissible even for that limited purpose. While, as we have held above, defendant's proofs as to mailing are admissible, they are not conclusive of that issue and do not preclude the existence of a genuine issue of material fact in the face of a claim of non-receipt so as to entitle the insurer to judgment as a matter of law. See Sudduth v. Commonwealth County Mutual Ins. Co., 454 S.W. 2d 196 (Tex.Sup.Ct. 1970); 9 Wigmore on Evidence (3d ed. 1940) § 2519; cf. Fitzpatrick v. Merchants and Manufacturers Fire Ins. Co., 122 N.J.L. 468 (E. & A. 1939). The contrary holding of Womack v. Fenton, 28 N.J. Super. 345 (App.Div. 1953), on this point is hereby overruled. Permitting the factfinder to consider the addressee-insured's denial of receipt of the notice of cancellation does not improperly add to the insurer's statutory burden of proving mailing by requiring it to prove actual receipt of the notice since such testimony is admissible only as the basis for an inference of its non-mailing. The insurer still need only prove constructive notice by adequately establishing that the notice of cancellation was mailed. [at 235-236]
Although defendant stipulated that Allstate claimed that a notice of cancellation was sent to defendant's wife, this did not establish that the notice satisfied the statutory requirements of N.J.S.A. 17:29C-8. There was no proof that the notice was mailed to the named insured (assuming that defendant's wife was the insured named in the policy) or that it was mailed to the address shown in the policy, or that its contents complied with the statutory requirements. The stipulation concurred in by the State and accepted by the judge was extremely general and contained none of these important details. Moreover, the State agreed with defendant that "if Allstate did mail the cancellation notice, it was done incorrectly," and that defendant's wife never received the notice of cancellation  thereby refuting "the hypothesis of mailing." The State's case was not saved by defendant's concession that the State was notified of the cancellation of the policy. Notice to the State was not notice to the policyholder. Thus, we are constrained to hold that the State failed to sustain its burden of proving beyond a reasonable doubt that the Allstate automobile liability insurance policy covering defendant's vehicle was lawfully cancelled. The Allstate policy therefore was presumptively in full force and effect, cf. Brown v. Shaw, 174 N.J. Super. 32, 40-41 (App.Div. *390 1980), and defendant's conviction for violating the compulsory insurance provisions of N.J.S.A. 39:6B-2 cannot stand.
The Supreme Court of New York arrived at the same result in a somewhat similar factual context in People v. Baron, 103 Misc.2d 1057, 431 N.Y.S.2d 234 (1980). There, defendant was convicted of operating a motor vehicle without financial security in violation of New York Vehicle and Traffic Law § 319 (McKinney Supp. 1981-1982). This statute, which is similar to N.J.S.A. 39:6B-2, provides in part:
1. Any owner of a motor vehicle registered in this state, or an unregistered motor vehicle, who shall operate such motor vehicle or permit it to be operated in this state without having in full force and effect the financial security required by the provisions of this chapter and any other person who shall operate in this state any motor vehicle registered in this state, or an unregistered motor vehicle, with the knowledge that the owner thereof does not have in full force and effect such proof of financial security, except a person who, at the time of operation of such motor vehicle, had in effect an operator's policy of liability insurance, as defined in section three hundred eighteen, with respect to his operation of such vehicle shall be guilty of a traffic infraction and upon conviction may be fined not less than one hundred dollars or more than one thousand dollars or may be imprisoned for not more than fifteen days or both. In addition to the penalties herein set forth, such person, upon conviction, shall also become liable for payment to the department of the civil penalty provided in subdivision five of this section
........
3. Every person who operates a vehicle registered in this state, or a vehicle required to be registered in this state, shall, when required by the commissioner's regulations, produce an insurance identification card when requested by any peace officer, acting pursuant to his special duties, police officer or magistrate. The failure to so produce such a card shall be presumptive evidence that such person was operating the vehicle without having in effect financial security required by the provisions of this chapter.
The People relied on evidence that defendant failed to produce his insurance card when he was stopped by a police officer, and that the insurance company sent a notice of termination to defendant's broker. Defendant, on the other hand, testified that he never personally received notice of cancellation and that he had secured insurance on his vehicle and received a temporary insurance identification card. The Supreme Court reversed defendant's conviction because the People offered no proof that the policy had been lawfully cancelled pursuant to § 313 of the *391 Vehicle and Traffic Law, in light of defendant's testimony that he never received the notice. The People argued that the statutory presumption regarding defendant's failure to produce his card was sufficient to show that the policy was cancelled. The Supreme Court disagreed, stating:
The People offered no proof that such notice was sent to the defendant but relied upon the presumption set forth in section 319 (subd. 3) of the Vehicle and Traffic Law that the failure to produce an insurance identification card is "presumptive evidence" of driving without financial security.
In order for a criminal statutory presumption to satisfy constitutional requirements, it must "... at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend" (County Court of Ulster County, New York v. Allen, 442 U.S. 140, 166 n. 28, 99 S.Ct. 2213, 2229 n. 28, 60 L.Ed.2d 777; Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519; United States v. Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658; United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210). While the aforementioned presumption satisfies this requirement where its effect is to show that a defendant never secured insurance at all, it cannot be constitutionally extended to prove that insurance properly secured was lawfully cancelled in a case where a defendant alleges that this was not so. Since the People offered no proof whatsoever to the contrary, the defendant's conviction must be reversed. [431 N.Y.S.2d at 235]
Accordingly, the judgment of conviction and the sentence imposed thereon are reversed.
NOTES
[1] N.J.S.A. 17:29C-8 was amended by L. 1980, c. 165, § 1, effective March 10, 1981, to provide for at least 15 days' notice where cancellation is for nonpayment of premium.
[2] N.J.S.A. 17:29C-10 was amended by L. 1980, c. 165, § 2, to provide:

No written notice of cancellation or of intention not to renew sent by an insurer to an insured in accordance with the provisions of an automobile insurance policy shall be effective unless a. (1) it is sent by certified mail or (2) at the time of the mailing of said notice, by regular mail, the insurer has obtained from the Post Office Department a date stamped proof of mailing showing the name and address of the insured and b. the insurer has retained a duplicate copy of the mailed notice which is certified to be a true copy.
This amendment, which did not take effect until March 10, 1981, could not possibly apply here because the Allstate policy was purportedly cancelled prior to the date of defendant's arrest on July 15, 1980.