666 A.2d 204

PATRICK GATTO, PLAINTIFF-RESPONDENT, v. NEW JERSEY AUTOMOBILE FULL INSURANCE UNDERWRITING ASSOCIATION, TRAVELERS INSURANCE COMPANY, DEFENDANT-APPELLANT, AND FRANK W. CERRA D/B/A FRANK W. CERRA INSURANCE, AND CHASE MANHATTAN SERVICE CORP., DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued September 28, 1995—Decided October 31, 1995.

666 

Before Judges SHEBELL, STERN and WALLACE.

*Francis E. Borowsky, Jr.* argued the cause for appellant New Jersey Automobile Full Insurance Underwriting Association (*Monte & Marriott*, attorneys; *Jamie S. Perri*, of counsel and on the brief).

*Stuart P. Schlem* argued the cause for respondent Patrick Gatto (*Mr. Schlem*, on the brief).

*Michael J. Canning* argued the cause for respondent Frank W. Cerra (*Giordano, Halleran & Ciesla*, attorneys; *Mr. Canning*, of counsel; *Sean E. Regan*, on the brief).

No brief filed on behalf of respondent Chase Manhattan Service Corp.

The opinion of the court was delivered by

STERN, J.A.D.

This is an appeal by defendant New Jersey Automobile Full Insurance Underwriting Association (NJAFIUA) from a final judgment entered in favor of plaintiff-insured in the amount of $61,600. Judgment was also entered in favor of third party defendant Chase Manhattan Service Corporation (Chase) against plaintiff as a result of a default on an automobile lease. There is no cross appeal, and Chase has not participated in this appeal. The trial judge also entered a supplementary order awarding prejudgment interest to plaintiff.

On May 18, 1989, plaintiff, Patrick Gatto (Gatto), leased a 1989 Mercedes Benz model 560SEC automobile from Ray Catena Motor Car Corporation pursuant to a "Closed–End Vehicle Lease Agreement" which was assigned to Chase. Pursuant to the lease requirements, plaintiff obtained automobile insurance through the Frank W. Cerra Insurance Agency (Cerra).

On April 24, 1990, the car was stolen from plaintiff's driveway. Plaintiff thereafter filed a claim under the policy issued by NJAF-IUA and its servicing carrier, Travelers Insurance Company (Travelers). Coverage was denied because the policy had expired. Plaintiff thereafter filed this action against NJAFIUA, Travelers and Cerra.

After plaintiff's motion for summary judgment on coverage was granted,[1] a bench trial was conducted on the issue of damages. The trial judge rendered a finding in plaintiff's favor for $61,600.

Plaintiff obtained vehicle coverage from NJAFIUA through Cerra commencing in March 1984. He owned or leased several vehicles from March 1984 to March 1990. All were covered for one-year policy terms, beginning and ending on March 3 of each year. The policies were all "direct bill" policies, meaning that "all policies, billings, premium due notices, premium unpaid notices, renewal offers and cancellation notices were sent directly to plaintiff" by the NJAFIUA's servicing carriers.

The 1989 Mercedes was added to plaintiff's policy when leased in March 1989. Travelers subsequently withdrew as a NJAFIUA servicing carrier, and Computer Services Corporation (CSC), the new servicing carrier, assumed responsibility for the Travelers' policies. Plaintiff's policy was therefore assigned to CSC as a "roll over" policy.

Pursuant to its normal procedure, CSC "automatically generate[s]" a "renewal quotation" thirty days before the policy's expiration date. According to CSC's computer records, a "renewal quotation" "was generated for Mr. Gatto ... on February 2, 1990 ... along with all other policies having a March 3, 1990 expiration date." The notice was not printed, however, until Saturday, February 3, 1990. Thus, as renewal notices are dispatched by "ordinary mail" to the insured, the agent and all lienholders, the renewal notice in this case would not have been mailed until

---

[1] Summary judgment was also granted to Chase against plaintiff and in favor of Cerra against plaintiff and the co-defendants.

Monday, February 5, 1990, less than thirty days before the expiration date.

According to Cerra, he received the "Agent Copy" of the "Personal Auto Coverage Renewal Quote," "on or about February 2, 1990." The "Renewal Quote" was dated February 3, 1990 and indicated that the policy was offered for renewal for the term March 3, 1990 to March 3, 1991. The notice provided that "if the payment is not received by 12:01 A.M." on March 4, 1990, "the policy will expire." [2] It was uncontested that the quoted premium of $1,523.52 was not paid.

On March 2, 1990, plaintiff was involved in an accident with the leased vehicle. Plaintiff telephoned Cerra to file a claim for the damages caused by the accident. According to Cerra, during the telephone conversation, he informed plaintiff that his insurance policy was to expire in "a day or two." He asked if plaintiff had paid the renewal premium, and received an affirmative response that plaintiff "was sure" he had. As a result, Cerra had no reason to do anything further with respect to the renewal, even though Cerra received no notification from CSC prior to the theft that Gatto had not paid the premium.

According to Cerra, "[s]ome time in late March 1990, [he] received a letter from Lisa Gatto, Plaintiff's wife, with a copy of a letter from Meritor Credit Corporation ... addressed to Plaintiff." Mrs. Gatto's letter stated that plaintiff "asked if you could take care of this." The enclosure, a letter dated March 22, 1990, informed plaintiff that Meritor, the lienholder under another vehicle lease agreement, had received notice that coverage under plaintiff's automobile policy had expired on March 3, 1990, and that it was plaintiff's obligation under that lease to maintain insurance coverage on the vehicle. Meritor asked for evidence of

---

[2] Since there is no statutory or regulatory requirement to maintain copies of renewal notices, CSC relies on computer records and does not maintain copies of the renewal notices it issues. However, Cerra had a "hard" copy of the notice dated February 3, 1990.

coverage reflecting that it was an "additional insured." On March 30, 1990 Cerra processed a "personal policy change request" to add Meritor as an "additional insured" on the other vehicle.[3]

On April 24, 1990, the car was stolen from plaintiff's driveway at his home in Marlboro. As noted, his subsequent claim was denied by the NJAFIUA on the ground that the policy had expired by reason of his failure to pay the premium. Plaintiff asserted that he had never received a copy of a renewal notice from either CSC or the NJAFIUA.

Plaintiff continued making payments to Chase, as required by the lease, until May 8, 1991. He thereafter defaulted on the lease agreement.

The summary judgment motion judge concluded that because plaintiff had not been provided with the thirty day renewal notice as required by JUA rules, "the automatic renewal of the coverage took place" and the policy was still in effect on the date of the theft.[4] At a subsequent trial on damages, plaintiff was awarded blue book value of $61,600.

On this appeal, NJAFIUA argues:

POINT I THE COURT BELOW ERRED IN ITS RELIANCE UPON UNSUP-
PORTED HEARSAY EVIDENCE TO ESTABLISH PLAINTIFF'S DAM-
AGES.

POINT II THE COURT BELOW ERRED IN ITS FINDING THAT THE
FAILURE TO PROVIDE 30 DAYS NOTICE OF AN OFFER TO RENEW
RESULTS IN THE AUTOMATIC RENEWAL OF AN AUTOMOBILE IN-
SURANCE POLICY.

---

[3] According to Cerra, "it takes 3 to 6 weeks ... to receive a copy of proof of renewal and/or Declaration Page" so he did not know the policy had been cancelled by the time he processed the request form. He certified that he learned of the cancellation by memorandum dated June 6, 1990 in response to his dispatch of the form.

[4] The judge also found that the JUA failed "to meet the burden to show that there was actual notice in conformity with the obligations of law." "JUA" is the shorthand abbreviation for the NJAFIUA. *See* Senate Labor, Industry and Professions Committee Statement to § 2790, *L.* 1986, c. 211; *N.J.S.A.* 17:30E–3.

NJAFIUA argues that the trial court "erred in its determination that coverage was owed to Gatto under the facts and circumstances of this case." Plaintiff contends, however, that NJAFIUA's failure to give the required notice of renewal, or "offer to renew," more than thirty days prior to the end of the policy period, *see Lopez v. Insurance Underwriting Association,* 239 *N.J.Super.* 13, 21–23, 570 *A.*2d 994 (App.Div.1990), automatically renews the policy for another period—or at least until a new renewal offer with proper notice issues or a notice of cancellation is dispatched for non-payment of premium. Plaintiff so asserts, notwithstanding that the carrier could reasonably believe the insured received timely notice and decided not to renew in light of the original notification, and notwithstanding that this approach would require the carrier to provide additional coverage without payment of premium until the next notice is generated and throughout the period embodied in that notification. The consequences of plaintiff's contention, if adopted, would be that plaintiff's renewal period would be perpetually extended at the end of each policy period, in the absence of notification, because the carrier, thinking that the policy was not renewed, would never generate a further notification.

We conclude that the policy did not terminate in the absence of adequate notice but, nevertheless, reverse the grant of summary judgment on coverage. We remand for trial as to whether and when plaintiff received actual notice of the policy expiration. We further conclude that coverage continued beyond the policy expiration date only for a reasonable period of time, and that there is, therefore, a factual issue relating to continued coverage in this case.

In *Lopez v. Insurance Underwriting Ass'n, supra,* we noted the distinction regarding the notice requirements relating to policy renewals, non-renewals and cancellations. *Lopez, supra,* 239 *N.J.Super.* at 18–20, 570 *A.*2d 994. *See also N.J.S.A.* 17:29C–6 *et seq.* (regarding "cancellation and renewals" of automobile insurance). While we also noted a distinction regarding the rules and

regulations governing the voluntary market and the JUA, we held that the rule with respect to JUA renewal notices "substantially tracks the regulation applicable to voluntary market policies," 239 *N.J.Super.* at 22, 570 *A.*2d 994, and that (unlike non-renewal and cancellation notices), "the renewal offer can be made by using ordinary mail." *Ibid.*[5]

The parties appear to agree that the JUA "renewal offer" rule as set out in *Lopez* applies in this case. Plaintiff candidly acknowledges that such mailing would suffice to terminate the policy had the notice been mailed more than thirty days before the expiration date and the premium had not been paid. In *Lopez* we remanded for a determination regarding whether the notice was mailed and did not explore how long the policy continued in effect if it was not.[6] The accident in that case occurred only one week after the policy expiration date.

By law, as plaintiff acknowledged before us at oral argument, a valid insurance identification card must be possessed in order to operate a motor vehicle in New Jersey, and operation of a vehicle without such a document constitutes an offense. *N.J.S.A.* 39:3–29.

---

[5] *Lopez* explains that *N.J.S.A.* 17:29C–9 makes a clear distinction between an offer to renew and a notice of non-renewal, and that *N.J.S.A.* 17:29C–10 controls only the mailing of notices of cancellation and non-renewal. *See* 239 *N.J.Super.* at 20–23, 570 *A.*2d 994. However, *Lopez* also explains that while the notice provisions of *N.J.S.A.* 17:29C–10 "do not apply to a JUA policy," 239 *N.J.Super.* at 20, 570 *A.*2d 994, and that *N.J.S.A.* 17:29C–6 *et seq.* and the regulations embodied in the *New Jersey Administrative Code* do not govern JUA policies unless "the JUA rules are silent or their meaning is ambiguous," 239 *N.J.Super.* at 21, 570 *A.*2d 994, the JUA rules parallel those relating to policies issued in the voluntary market. 239 *N.J.Super.* at 19–20, 570 *A.*2d 994. *See also Munoz v. Quinn*, 284 *N.J.Super.* 61, 663 *A.*2d 139 (Law Div.1994), *aff'd o.b., sub. nom. Munoz v. N.J. Auto. Full Ins. Ass'n*, 284 *N.J.Super.* 1, 663 *A.*2d 108 (App.Div. 1995) (holding that a notice cancelling a NJAFIUA policy, like this one, for non-payment of premium cannot be issued under *N.J.S.A.* 17:29C–7(A)(a) before the premium due date).

[6] *Munoz v. N.J. Auto. Full Ins. Ass'n, supra,* would permit an insurer to set a premium due date prior to the date on which the policy expires and "effectuate cancellation immediately after expiration of the period for which the insured has paid for coverage." 284 *N.J.Super.* at 3, 663 *A.*2d 108.

Thus, the absence of receipt and possession of a valid insurance identification card would require an owner of a motor vehicle to at least make inquiry about the status of his or her policy. The failure to make such inquiry for a reasonable period of time following the policy expiration date, and after the date noted on an expired insurance identification card, can defeat the vehicle owner's reasonable expectation of coverage.

The papers before the motion judge on summary judgment presented a factual question as to whether the plaintiff actually received an "offer to renew" from NJAFIUA or its servicing carrier. Plaintiff asserts that he never received the "offer to renew," although proof of mailing would normally suffice. *Lopez, supra,* 239 *N.J.Super.* at 23, 570 *A.*2d 994. He asserts that coverage must, in any event, continue here because of the absence of the required thirty-day notice.

We agree that coverage must be deemed to continue, but only for a reasonable period of time. Whether and when the renewal notice was actually mailed and received by plaintiff is an important consideration in this regard. Further, the proofs reflect that a notice was mailed to plaintiff by Meritor, the lienholder of another vehicle on the same policy, and that Cerra actually discussed the expiration with plaintiff. Moreover, if plaintiff received no "renewal offer," he would have had no effective insurance identification card in his possession after March 3, 1990. We perceive the existence of factual issues regarding if and when plaintiff received the "offer to renew" notification, or other notice of the policy expiration, and whether plaintiff permitted an unreasonable period of time to elapse without pursuing the question of coverage before the theft. In the absence of a timely renewal notice or "offer to renew," coverage continued, but only for a reasonable period following the policy expiration date of March 3, 1990. What is a reasonable period depends upon the totality of the factual circumstances. A jury question was thus presented as to whether the policy continued in effect through the date of the theft.

■ We find no basis to disturb the amount of damages awarded in the event of coverage. *R.* 2:11–3(e)(1)(A),(E). Plaintiff was not aware of the vehicle's recovery and the subsequent public auction until after it occurred.

The judgment is reversed, and the matter is remanded for further proceedings consistent with this opinion.