671 A.2d 195

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. NANCY J. DAVID, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 24, 1996—Decided February 20, 1996.

Before Judges STERN and NEWMAN.

*Santiago D. Orozco* argued the cause for appellant (*Flores & Sternick,* attorneys; *Mr. Orozco,* on the letter brief and reply letter brief).

*Barbara Petersen,* Special Deputy Attorney General, argued the cause for respondent (*Charles R. Buckley,* Deputy Attorney General—In Charge and Acting Bergen County Prosecutor, attorney; *Susan W. Sciacca,* Special Deputy Attorney General, of counsel and on the letter brief).

The opinion of the court was delivered by

STERN, J.A.D.

Defendant was charged in the Bergen County Special Civil Part with driving an uninsured motor vehicle, *N.J.S.A.* 39:6B–2, driving an unregistered vehicle, *N.J.S.A.* 39:3–4, and using fictitious license plates, *N.J.S.A.* 39:3–35. Defendant pled guilty to the license plate violation and was found guilty on the other two charges. Fines and fees were imposed, and defendant's driver's license was suspended for one year for driving an uninsured motor vehicle. Defendant appeals directly to us. No issue is raised concerning the direct appeal.

At about 2 o'clock in the afternoon of July 30, 1993 Officer Orem of the Bergen County Police Department responded to the scene of a motor vehicle accident on Route 46 in South Hackensack. The car defendant was driving, a two-door 1980 Chevrolet, with license plates FNG 30V, was involved in the accident. After inquiring if anyone at the scene was hurt, Officer Orem asked defendant for her driving credentials. Defendant produced a valid driver's license but was unable to produce the registration and insurance card. Officer Orem testified that defendant said "[s]he did not have insurance." Officer Orem ran a "check" on the

license plate and found that "the license plates themselves were expired as of 2/91, the second month of 1991, and the plates belonged on a different vehicle." Orem also testified that he found that the car that defendant was driving "was not registered."

Defendant testified on her own behalf. She indicated that the car was insured and registered at the time of the accident. She said that her son, Jimmy Carrero, owned the car and that they discussed the question of the license and registration the night before the accident. She further testified that Jimmy told her he was obtaining insurance on the morning of the accident. Defendant acknowledged that she did not have an insurance card or registration in her possession at the time of the accident but produced them at the trial.

The insurance card issued for the vehicle involved in the accident named James J. Carrero as the insured. The card indicated an effective date of "7–30–93," the date of the accident. Defendant also produced a vehicle registration for the automobile. The registration indicated that it was "GOOD THRU: 07/94."

Defendant also presented the declaration page of an insurance policy bearing the policy number noted on the insurance identification card. It indicated that Jimmy Carrero had two covered vehicles, not including the one in the accident, "from 06/07/93 to 12/07/93." Although not produced in the form of testimony, counsel advised the court of the following:

> To assist the Court, my client's testimony would be that his—her son had two other vehicles that were—were no longer in operation. He obtained a third vehicle. He was—and he—he added it to the existing policy. The policy numbers match up.

Defendant further testified that at the time of the accident she was en route to her son's place of employment, a Burger King restaurant, to get the papers for the vehicle that she thought he had there for the vehicle she was driving. She subsequently learned that the papers were at home "in the drawer, locked with a key."

On redirect, defendant testified that the car was insured and registered when she left home on the morning of July 30, 1993. She indicated on recross that she knew that because of the conversation she had with her son the night before and because "when I got up in the morning to go to work [on July 30] he was gone."

The "insurance identification card" for the vehicle (D1), the "vehicle registration" (D2), and the policy declaration face sheet (D3) were admitted into evidence. There was no testimony as to when D1 and D2 were actually issued.

The trial judge found defendant guilty of the two charges tried before him. His entire opinion read:

> All right. I—I find that the State has proven beyond a reasonable doubt that the defendant is guilty of both offenses, and her—her testimony is totally incredible. It doesn't make sense.

On this appeal defendant argues:

POINT I THE TRIAL COURT ERRED IN ITS APPLICATION OF THE LAW TO THE FACTS AND EVIDENCE IN THIS CASE, A CORRECT APPLICATION CAN ONLY PRODUCE AN ACQUITTAL OF BOTH CHARGES.

 A. The vehicle owned by Jimmy J. Carrero and operated by Nancy A. David was insured on July 30, 1993, effective 12:01 a.m.

 B. Applicant was not the owner of the vehicle in question and therefore, cannot be convicted of a violation under N.J.S.A. 39:3-4, for failure to register it.

## A.

The State argues that defendant's response to the inquiries of Patrolman Orem at the scene, to the effect that she had no insurance and registration, together with the fact that license plates from another vehicle were on the car and that the car was not registered according to DMV records at the time, provide sufficient inferences that there was no insurance when the accident occurred. The State contends that, even though the insurance identification card reflects a "7–30–93" effective date, its production does not indicate that the insurance was actually obtained prior to the time of the accident that day. While the number on the insurance policy is the same as that noted on the

identification card, the 1980 Chevrolet was not listed on the declaration page as one of the vehicles covered under the policy. Hence, the State also argues that there is no evidence that the car involved in the accident was insured prior to the time of the accident on July 30, 1993.

*N.J.S.A.* 39:6B–2 provides in part that:

Failure to provide at the time of trial an insurance identification card or an insurance policy which was in force for the time of operation for which the offense is charged, creates a rebuttable presumption that the person was uninsured when charged with a violation of this section.

An insurance identification card must be possessed by the operator of the motor vehicle while it is being operated. *N.J.S.A.* 39:3–29. *See Gatto v. New Jersey Full Insurance Underwriting Ass'n,* 284 *N.J.Super.* 665, 672, 666 *A.2d* 204 (App.Div.1995). *N.J.S.A.* 39:6B–2 permits the operator to defend against the charges by showing that the vehicle was, in fact, insured at the time it was alleged to the contrary.[1] Otherwise, the operator of the motor vehicle, whether or not the owner, is guilty of driving the uninsured motor vehicle. *See State v. Hochman,* 188 *N.J.Super.* 382, 387, 457 *A.2d* 1156 (App.Div.1982); *State v. Schumm,* 146 *N.J.Super.* 30, 368 *A.2d* 956 (App.Div.1977), *aff'd o.b.,* 75 *N.J.* 199, 381 *A.2d* 33 (1978).

As Judge Michels has said in a case dealing with the prosecution under *N.J.S.A.* 39:6B–2 of the owner of the vehicle:

This statute creates two classes of persons who are subject to its provisions: *owners/registrants of motor vehicles* and *operators of motor vehicles.* The statute imposes strict liability upon an owner/registrant for operating or causing to be operated his motor vehicle without the liability insurance coverage required by *N.J.S.A.* 39:6B–1. An operator, however, is liable only if he knows or should know from the attendant circumstances that the motor vehicle he is operating is not covered by the required liability insurance policy.

[*State v. Hochman, supra,* 188 *N.J.Super.* at 387, 457 *A.2d* 1156.]

---

[1] The last paragraph of *N.J.S.A.* 39:3–29 (which deals with the failure to possess the documents) also permits dismissal of a complaint filed under that section "[i]f a person charged with a violation of this section can exhibit his driver's license, insurance identification card and registration certificate which were valid on the day he was charged."

 *N.J.S.A.* 39:6B–2 is designed to assure the safety of our citizens by making it a motor vehicle offense for driving an uninsured motor vehicle. But where the driver produces evidence of coverage at the alleged time of no coverage, the purpose embodied in the statute is satisfied. Here, the "insurance identification card" was produced at trial and states an "effective date" of "7–30–93," the date of the accident. Given the production of the "insurance identification card," the policy declaration page face sheet noting that the policy on the card was effective before the accident, and defendant's testimony that she understood that her son had registered the car and obtained insurance on the morning of July 30, the State did not sustain its burden of proving that defendant knew or should have known "from the attendant circumstances that the motor vehicle [s]he was operating [was] not covered by the required liability insurance policy." *State v. Hochman, supra* at 387, 457 *A.*2d 1156.

### B.

Defendant also contends that she cannot be convicted of *N.J.S.A.* 39:3–4, driving an unregistered vehicle, because she was not the owner of the vehicle. The first paragraph of that statute provides that ". . . every resident of this State and every nonresident whose automobile or motorcycle shall be driven in this State shall, before using such vehicle on the public highways, register the same, *and no automobile or motorcycle shall be driven unless so registered.*" (Emphasis added.)

As previously noted, *N.J.S.A.* 39:3–29 requires the "driver or operator" of a motor vehicle to "be in the possession of" the "registration certificate" as well as the insurance identification card and a driver's license. *N.J.S.A.* 39:3–4 makes it a violation to drive an unregistered motor vehicle just as *N.J.S.A.* 39:6B–2 makes it a violation to operate a motor vehicle without insurance. *See also N.J.S.A.* 39:3–10 (driving without a license).

 In *State v. Hochman, supra,* we noted that ownership is not a required element to sustain a conviction for driving an

uninsured motor vehicle. We now so hold with respect to driving an unregistered motor vehicle. While much of *N.J.S.A.* 39:3–4 relates to the owner's obligations to register the vehicle, a paragraph thereof also provides that "[n]o person owning *or* having control over any unregistered vehicle shall permit the same to be parked or to stand on a public highway." (Emphasis added.)[2] This paragraph, together with a provision permitting police officers to remove unregistered vehicles from the highways, became a part of *N.J.S.A.* 39:3–4 in 1954. *See L.*1954, *c.* 172, § 1. We do not believe the Legislature would have made it a motor vehicle offense for an operator to park or let stand on a public highway an unregistered vehicle if it did not intend the first paragraph to apply to operators as well as owners of such vehicles. This interpretation also flows from *N.J.S.A.* 39:3–29 requiring the operator of a motor vehicle to possess the registration when driving it. By requiring the possession of a registration certificate, the driver is obligated to ascertain if the car is, in fact, registered. *Cf. Gatto v. New Jersey Full Insurance Underwriting Ass'n, supra,* 284 *N.J.Super.* at 672–73, 666 *A.*2d 204 (insurance).

As with *N.J.S.A.* 39:6B–2 respecting insurance, a non-owner should be liable for operating an unregistered vehicle "only if he [or she] knows or should know from the attendant circumstances that the motor vehicle he [or she] is operating is not" registered. *State v. Hochman, supra,* 188 *N.J.Super.* at 387, 457 *A.*2d 1156. Failure to possess the registration certificate constitutes part of "the attendant circumstances."

Patrolman Orem testified that when he responded to the accident he did a record check and learned that the motor vehicle was not listed on the computer as of that time, and defendant did not possess the registration. There was no objection to this testimony, and no evidence was adduced as to the time it takes to

---

[2] That paragraph referred to a "motor vehicle" at the time of the accident involved in this case, but the word "motor" was deleted by *L.*1995, *c.* 112, § 27. The amendment has no impact on the issues before us.

place registration information on the computer. However, defendant introduced the vehicle registration which indicates that the registration was "GOOD THRU: 07/94" (meaning that it was issued in July 1993, *see N.J.S.A.* 39:3–4); the parties agree that a motor vehicle cannot be registered without evidence of coverage (*see N.J.S.A.* 39:3–4), and defendant produced evidence of coverage effective July 30. Moreover, the accident occurred at 2 p.m. on Friday, July 30, 1993, and July 31, 1993 was a Saturday. Thus, even giving the State the benefit of all favorable inferences, we are satisfied that the State did not sustain its burden under these circumstances of proving the violation of *N.J.S.A.* 39:3–4 by a non-owner of the vehicle.

In essence, while we reject defendant's contention that a non-owner of an automobile cannot be convicted of driving an unregistered vehicle, we hold that the State did not sustain its burden of proof in this case.

## C.

The convictions of defendant for driving an uninsured motor vehicle and for driving an unregistered vehicle are reversed.